VENE WILLIAMS, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.*

In the Springfield Court of Appeals. Opinion filed September 1, 1925.

1. **EVIDENCE: Blank Telegram Offered in Evidence to Prove Uniform Provision on Back Thereof Held Improperly Rejected.** In action for error in transmission of interstate telegram, telegraph company's offer in evidence of blank telegram, in order to show uniform provision on back thereof limiting company's liability, was improperly rejected by trial court on theory that the original telegram involved in the suit was the best evidence.

2. **PLEADING: Plaintiff's Pleadings Held to Admit Fact of Existence of Provision of Telegraph Blank Limiting Liability of Company.** In action for error in transmission of interstate telegram, where plaintiff's reply practically admitted the existence of provision on back of telegram exonerating the company for errors unless notice were given in sixty days, but pleaded he was not bound thereby, and denied that he had failed to comply therewith, the provision in question would be treated as an admitted fact.

3. **TELEGRAPHS AND TELEPHONES: Telegrams: Provision Limiting Liability of Company if Notice Not Given: Affirmative Defense.** It is the law of this State that the defense of a telegraph company, in action for error in transmitting telegram, based on failure to give notice of claim, as required by provision on back of telegram blank, is an affirmative defense, and must be proven by the party pleading it.

4. **COMMERCE: Interstate Telegrams: Constitute Interstate Commerce.** A telegraphic message transmitted from one State to another constitutes interstate commerce, and contract between sender and company is controlled by Federal laws and decisions.

5. **TELEGRAPHS AND TELEPHONES: Interstate Telegrams: Stipulations Based on Rate or Classification Binding, under Federal Law and Decisions.** Under Act of Congress, June 18, 1910, section 7 (U. S. Comp. St., sec. 8563), and Federal decisions, stipulations based on a particular rate or classification made by a telegraph company relative to interstate messages have the binding effect of a law, and neither the company nor its patrons may depart therefrom in any particular.

6. ————: ————: **Under Federal Law, Provisions Affecting Liability of Carrier of Interstate Commerce Cannot be Waived, and Compliance Must be Established by Plaintiff.** Under Federal law and decisions, provisions affecting the liability of the common carrier of interstate commerce cannot be waived, and noncompliance with uniform provisions, such as provision of telegram requiring sixty days' notice to company of claim through error in transmission of telegram, does not constitute a defense the burden of which is cast on defendant, but compliance therewith is part of plaintiff's case, which must be established like any other essential fact necessary to fasten liability upon defendant.

7. ————: ————: **Measure of Damages for Error in Transmission of Message Stated.** Measure of damages for error in transmission of interstate telegraphic message, resulting in recipient of telegram shipping other live stock than that ordered by sender of telegram,

*held* difference between what shipper paid for the stock shipped and the reasonable market value of the stock at the point of destination or the nearest market, plus a reasonable amount for plaintiff's time and expense in buying, shipping, and disposing of said stock, the total amount of damages not to exceed the limitation on liability contained in contract with company.

---

\*Headnotes 1. Evidence, 22 C. J., Section 1310 (Anno); 2. Pleading, 31 Cyc., p. 87; 3. Tel. and Tel., 37 Cyc., p. 1731; 4. Commerce, 12 C. J., Section 58; Courts, 15 C. J., Section 318; 5 Tel. and Tel., 37 Cyc., p. 1688; 6. Tel. and Tel., 37 Cyc., p. 1691; 7. Tel. and Tel., 37 Cyc., p. 1769.

Appeal from the Circuit Court of Texas County.—*Hon. W. E. Barton,* Judge.

REVERSED AND REMANDED.

*Frances R. Stark,* of New York City, and *Green, Green & Green,* of West Plains, for appellant.

(1) A telegram sent from one State to another is Interstate Commerce and Federal Laws and Decisions are of controlling influences in disposing of litigation arising thereon. Jacobs v. Western Union, 196 S. W. 28-31; Poor Grain Co. v. Western Union, 198 S. W. 28. (2) Printed stipulations on the back of the telegram blank, limiting liability for delay, mistransmission and misdelivery of the message written thereon, unless repeated are valid. Jacobs v. Western Union, supra. (3) The stipulation on the back of a telegram limiting the liability of the company may be invoked by the company in an action brought against it by the sendee. Jacobs v. Western Union, supra; Kerns v. Western Union, 198 S. W. 1132; Poor v. Western Union, 198 S. W. 28. (4) It was not necessary for the appellant to introduce into evidence the original telegram in order to show the stipulations on the back thereof for the reason that it is settled law that the regulations and stipulations established and promulgated by the appellant have the force

of law and it makes no difference on what kind of blank the original message is written, or whether it is written on any blank at all. Western Union v. Esteve Bros., 256 U. S. 566. (5) Indirect denial of matter pleaded in a petition is insufficient and such matter will be taken as true and stand admitted. Boles v. Bennington, 136 Mo. 522; Stopp v. Schultz, — S. W. 139; Kerns v. Western Union, 198 S. W. 1132; Bruner Granitoid Co. v. Glenco Lime Co., 169 Mo. App. 295-302; Sec. 1256, R. S. 1919. (6) Whether plaintiff admitted in his reply that there was a condition in the contract on the back of the telegram, set out and pleaded by defendant telegraph company, filed for transmission, but denied that such affected him as addressee, he cannot maintain that such condition is not in the record. Kerns v. Western Union, 198 S. W. 1132. (7) The negligence of the telegraph company must have been the sole cause of respondent assembling the calves and if that expense would have been made even though there had been no mistake in the telegram, plaintiff cannot recover the expense thereof. Hunter v. Western Union, 135 N. C. 458; Western Union v. Patton, 55 S. W. 953; Alexander v. Western Union, 126 Fed. 445. (8) If respondents' loss was not caused solely by the mistake in the telegram but a new cause intervened between the mistake in the telegram and the injury caused thereby, the appellant is not liable. Logan v. Wabash Ry. Co., 96 Mo. App. 461. (9) If respondent is entitled to any damage in this case it would be the difference between the price paid for the heifers and the market value of the property purchased. Reed v. Western Union, 135 Mo. 661; Western Union v. Spivey, 98 Tex. 308; Western Union v. Bell, 24 Tex. App. 572; 287 Fed. 731. (10) If there was no market value for the heifers at Arthur, Ill., the measure of damages would be the difference between the price paid for them and the best price obtainable on the nearest market, together with transportation charges. Western Union v. James, 90 Ga. 254. (11) It was the duty of Williams to sell on

the best market and he should not have sold at a loss at the point of destination if by reshipping to another point he could have secured a price which after paying transportation charges would have involved a smaller loss. Logan v. Wabash Ry. Co., 96 Mo. App. 461; Postal Tel. Co. v. Schafer, 110 Ky. 907. (12) Before respondent could recover from appellant it devolved on him to prove that the required notice was given to appellant within sixty days and unless he did show this he would not have been entitled to judgment in any amount. Davis v. Western Union, 236 S. W. 407, 154 Mo. App. 279.

*B. L. Rinehart,* of West Plains, for respondent.

Plaintiff concedes that if defendant had introduced in proper form the printed matter on the back of the telegram which was sent by Stevens to plaintiff then under the Federal rulings he would be limited to the principal sum of $500 in damages together with interest from the date of the claim until judgment. As we understand the law the true measure of damages for one who has been damaged by the negligence of another is such damage as may naturally and reasonably flow from the consequence of the mistake of the negligent party. Providing such damage can be actually shown. Reed v. Western Union Telegraph Co., 135 Mo. 661. Now what were the natural consequences or results of the mistake in this particular telegram? Because of said mistake and said mistake alone plaintiff started out over the country to buy up these calves in accordance and in conformity with the telegram received by him. He believing of course that he had a contract for said calves at seven cents per pound which would have netted him $2110 but because of the mistake in the telegram there was not any actual meeting of the minds of plaintiff and Stevens, therefore there was no contract. Plaintiff bought these calves paying for them $1905, had there actually been a contract then plaintiff's damages would

have been the difference in what he was to receive for said cattle which was $2110 and $1400. The amount he did actually receive or a damage of $710, which of course would be more damages than he has herein asked for. We contend that plaintiff's measure of damages is the difference between $1905 what he paid for the calves and $1400, what he actually received for said cattle, together with a reasonable compensation for his time and expense in buying up said stock. In defendant's points and authorities its last contention is that the burden is upon the plaintiff to prove that his claim was presented to the company within sixty days. In the first place if the court was correct in holding that the stipulation on the back of the telegram was not in evidence then there was no sixty days' clause in evidence and the same would not be an element in this case, but conceding that the back of the telegram was in evidence yet the burden of proving that said claim was not presented to defendant in sixty days was upon defendant as the same is an affirmative defense the rule is this, to-wit: The defense of a failure to give the sixty days' notice as required on the back of a telegram is an affirmative one and the burden is on the defendant. Josie Covell v. Western Union, 164 Mo. App. 630; Kindle v. Western Union, 56 Mo. App. 192; Smith v. Western Union, 57 Mo. App. 259. Plaintiff specifically denied in his reply that he failed to present his claim within sixty days and stood ready and able to prove that he presented his claim in time had the defense offered evidence to the contrary, but naturally did not want to assume any unnecessary burdens and offered no proof in that respect for the reason that the defendant showed nothing to the contrary. The case cited by defendant in its brief of Davis v. Western Union, 236 S. W. 407, is not in point as their plaintiff set up in his petition the kind of notice he gave and attempted to prove that that was sufficient. Therefore he assumed that burden and if his proof was not sufficient then his cause must fail.

218 Mo. App.—24.

BAILEY, J.—This is an action for damages for error in transmitting an unrepeated telegraphic message from Arthur, Illinois, to West Plains, Mo., which original message delivered to defendant for transmission was as follows:

"Arthur, Ill. Aug. 28, 1923.
"Vene Williams,
"West Plains, Missouri.

"Send one load of steer calves as heifers have to be T. B. tested to ship in this State. Let know if you ship them at once.

"Signed. BOB STEVENS."

The message, as delivered to plaintiff, read as fol- lows: .

"Arthur, Illinois. Aug. 28, 1923.
"To Verne Williams,
"West Plains, Missouri.

"Send one car load of steers and heifers have to be T. B. tested to ship in this state. Let know if you ship them at once.

"Signed. BOB STEVENS."

Defendant had printed on the back of each telegraphic blank, among others things, two provisions which are involved in this case. One provision was that: "The company will not be liable for damages or statutory penalties in any case where the claim is not presented is writing within sixty days after the message is filed with the company for transmission." There was a fur- ther provision, that the company's liability at the un- repeated message rate should not exceed five hundred dollars. Plaintiff obtained judgment for $649.47, from which defendant appeals.

The principal contention made by defendant is that its demurrer to the evidence should have been sustained on the theory that plaintiff failed to prove that he gave proper and timely notice of his claim. Defendant, by its answer, pleaded failure on the part of plaintiff to serve such notice within sixty days as provided by the

stipulation on the back of the telegram blank which the answer sets out in full. Plaintiff, by his reply, denied that he was bound by such stipulation and further denied that he failed to present his claim within sixty days from the receipt of said message.

Preliminary to a consideration of this question, we shall dispose of plaintiff's contention that since defendant failed to introduce in evidence any proof of the provisions on the back of the telegram blank, such provisions are not in the record and therefore may not be considered by this court. Defendant attempted to introduce a blank telegram in evidence showing such provision, but the trial court refused to permit its intro-duction on objection by plaintiff that the original was the best evidence. Plaintiff would be bound by such pro-vision whether on the back of the original telegram or not and the offer to prove such uniform provision was entirely proper. [Western Union Telegraph Co. v. Esteve Bros., 256 U. S. 566.] Moreover, plaintiff's reply practically admitted the existence of the provision as to sixty days' notice, but pleaded he was not bound thereby and denied that he had failed to comply there-with. We may, therefore, consider such provision as an admitted fact. [Kerns v. Western Union, 198 S. W. 1132; Sec. 1256, R. S. 1919.]

No proof was offered by either party relative to the giving or failure to give the sixty-day notice. It is un-questionably the law of this State, as plaintiff contends, that the defense based on a failure to give such notice is an affirmative one, and must be proven by the party pleading such defense. [Jessie Covell v. Western Union, 164 Mo. App. 630, 147 S. W. 555.] But the message here involved was transmitted from one State to another and constituted interstate commerce. The Federal laws and decisions therefore control. [Jacobs v. Western Union, 196 S. W. 31; Poor Grain Co. v. Western Union, 196 S. W. 28.] We have found no Federal decisions which have decided just where the burden of proof lies

in such cases. In so far as interstate messages are concerned, the act of Congress of June 18, 1910, chapter 309, article 7, 36 Stat. at L. 539, has greatly changed any previous conceptions our courts may have had on the subject. In the case of Western Union Tel. Co. v. Esteve Bros., supra, the Supreme Court of the United States uses the following language: ''The Act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act, companies had a common-law liability from which they might or might not extricate themselves, according to views of policy prevailing in the several States. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not, as before, a matter of contract, by which a legal liability could be modified, but as a matter of law, by which a uniform liability was imposed.''

It is thus seen that the highest court of our land has laid down a broad principle that stipulations based on a particular rate or classification made by a telegraph company relative to interstate messages, have the binding effect of a law and neither the company or its patrons may depart therefrom in any particular. If such rate is unreasonable or the stipulations unfair, parties may have their redress by proper procedure. The whole proposition is based on uniformity and equality. In the Esteve case, a stipulation limiting the liability of the company for mistake in transmitting a message to the amount of the portion of the tolls accruing to it, was declared to be binding as a matter of law. In the case of Kerns v. Western Union, supra, the Kansas City Court of Appeals points out that under the Federal

decisions, provisions affecting the liability of the common carrier of interstate commerce, cannot be waived and for the same reason, the sixty-day notice may not be waived by a telegraph company. The case of Davis v. Western Union, 236 S. W. l. c. 409, is to the same effect. It then necessarily follows that noncompliance with uniform provisions, such as are here involved, does not constitute a defense the burden of which is cast on defendant, but compliance therewith is part of plaintiff's case, which must be established like any other essential fact necessary to fasten liability upon defendant.

In the case at bar, plaintiff shipped a car of stock, a part of which was not of the kind the buyer ordered by the terms of the original telegram, and therefore, the shipment was refused. The action of plaintiff in procuring and shipping stock contrary to this order was a direct result of defendant's error in transmitting the message. Obviously, no fixed rule may be laid down as the measure of damages for all cases of this nature. It cannot be based on the difference in the price plaintiff was to receive for certain stock and what he did receive, because the stock, as contemplated by the original contract, was never shipped; there was no contract, therefore, as to the stock actually shipped. Under such circumstances, plaintiff's damages would naturally be the difference in what he had paid for the stock and the reasonable market value of the stock at the point of destination or the nearest market, plus a reasonable amount for plaintiff's time and expense in buying, shipping and disposing of said stock, not to exceed in all the sum of five hundred dollars.

It appears plaintiff has indicated he can prove proper and timely notice was given defendant in this case. The cause should not, therefore, be reversed outright. [Kidd v. Zinc Co., 204 S. W. 284.]

The case is accordingly reversed and remanded. *Cox, P. J.,* and *Bradley, J.,* concur.