William A. WARNER and B. D. Warner, doing business as Warner Oil Company, Appellants,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Respondent.

No. 52841.

Supreme Court of Missouri, Division No. 2.

May 13, 1968.

Motion for Rehearing or to Transfer to Court En Banc Denied June 10, 1968.

———◆———

Robert W. Spangler, James E. Thompson, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for appellants.

Karl F. Schmidt, Robert M. Kroenert, Kansas City, John Mohler, Jean Charles Smith, St. Louis, for respondent; Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, of counsel.

EAGER, Judge.

This is an action for damages charging the negligent and incorrect listing of plaintiffs' business in two successive telephone directories. There was a verdict for plaintiffs, the Court granted a new trial and plaintiffs appealed. Plaintiffs operate a service station and a sales business in oil, bulk gasoline, farm chemicals and tires, and have done so since 1946. Their place of business is in Archie, Missouri, and a telephone listing had been regularly carried there under the name of "Warner Oil Co." Plaintiffs also carried an advertisement in the classified section of the directory. The directories of Archie and Adrian were printed in one book of about 15 pages. It also carried some classified advertising for businesses in surrounding towns. There was no telephone operator at Archie. Plaintiffs arranged for their usual listings for the 1964 directory to be delivered by March 1, 1964, but when it came out they found that "Warner Oil Co." was listed in the Adrian section and omitted from the Archie section, although the number given was correct; the number contained an "AX 3" prefix, correct for Archie, but incorrect for Adrian ("AX–7"). William Warner, upon discovering the error, promptly called the Kansas City Supervisor, complained to her and "tried to get some action." It is essentially conceded that the Kansas City office had jurisdiction over the matter, although it did not prepare the directory. The Supervisor seemed "concerned" and agreed to see "what could be done"; Warner talked with her on several subsequent occasions, and she said they "might consider" sending out cards, but he did not insist on that because it "wouldn't have helped much"; Warner was told that the company could not consider reissuing the book. Nothing further was done until the latter part of 1964 when two agents of the telephone company came around for a renewal contract. Plaintiffs did renew both the business listing and the advertising; these agents apologized for the incorrect 1964 listing, and promised that it would not reoccur. When Mr. Warner got the 1965 directory about March 1, he found immediately that the business was still listed in Adrian, as it was in 1964. He called Kansas City again, asked for the "chief man," but ended up with the same woman to whom he had talked previously; he complained rather bitterly of the repeated error. She, in turn, did not see how it could have happened. The principal difficulty experienced in plaintiffs' business, according to the testimony, was on incoming long distance or "toll" calls from farmers and others in relatively nearby communities, who wished to order something, did not have the telephone number, and relied on the telephone "Information." Mr. Warner testified that a great part of his better business came to him in this manner. Two or three witnesses testified that in such interchanges they had heard the operators say that there was no such business listed in Archie. At times Mr. Warner tried to correct the operators. Under date of March 3, 1965, a "Directory Error Report" was made through Kansas City to the Directory Production Office at St. Louis, but by that time the 1965 Directory had already been printed and distributed.

It was developed in defendant's evidence that it issued to its long distance or "toll"

operators "reprints" of the alphabetical listings from its directories approximately every six weeks. These were to take care of moves, new subscribers and changes generally. Defendant produced such a reprint, dated August 12, 1965, for Adrian and Archie, listing plaintiffs' business correctly, but was wholly unable to show that any such correction had been made prior to that date with the long distance operators or otherwise. That correction seems to have taken care of plaintiffs' principal complaints after that date, for it permitted their long distance calls to come through, even if the number was not available to the caller. The Directory Sales Manager testified: that in preparing the directories a slip is prepared for each customer and that plaintiffs' slip had been placed in the wrong box or container by error, before the material was sent to a printer in Oklahoma; that directories for communities of less than 50,000 are not proofread by the defendant; that defendant lists more than five million subscribers in five states and part of another.

The "General Exchange Tariff" filed by defendant with the Missouri Public Service Commission, under the heading "Telephone Directories," contained the following: "C. ERRORS—The Telephone Company's liability for damages arising from errors or omissions in the making up or printing of its directories or in accepting listings as presented by customers or prospective customers shall be limited to the amount of actual impairment of the customer's service, and in no event shall it exceed the amount paid for the service during the period covered by the Directory in which the error or omission occurs."

The alphabetical listing is an automatic part of the service furnished to the subscriber; advertising is handled by a separate and supplemental contract. Certain further evidence will be mentioned briefly later; it concerns plaintiffs' claim for actual damages and it may be more appropriately discussed when we rule on its sufficiency.

Plaintiffs alleged that defendant's acts and neglect were so grossly negligent that they constituted "willful, intentional and malicious conduct," and they prayed both actual and punitive damages. Defendant admitted certain formal allegations, denied the substantive claims, and pleaded affirmatively the limitation set out above as a complete bar to any recovery in excess of $189.84, the amount concededly paid for service during the period in question. The verdict was for $2,000 actual damages and $15,000 punitive damages. A new trial was granted for error in giving plaintiffs' damage instruction (MAI 4.01), and in refusing one offered by defendant which limited the damages to an amount not exceeding $189.84.

■ Some question has been raised by respondent concerning our jurisdiction upon the theory that there is no evidence in the record to support any award of punitive damages, and that the actual damages should have been limited to $189.84 as a matter of law. So far as our jurisdiction is concerned, the point is of no essential merit. The trial court submitted the issues of both actual and punitive damages to the jury, and the jury awarded plaintiffs damages totaling $17,000. The order from which this appeal was taken, took away that verdict in its entirety. For jurisdictional purposes the amount of the verdict is controlling.

■ Defendant first asserts that plaintiffs have improperly shifted their theory on this appeal in that they pleaded, tried and submitted their case upon the existence of errors in the directories, but now claim negligence by reason of the failure to furnish the toll operators with accurate listings. We recognize the legal principle, but we have considered the question as applied to this case and find it to be of no merit. The whole difficulty arose out of the errors in the directories, and the other acts constituted merely a continuation of the negligence. The basic theory has not been changed.

■ The controlling question here is the effect of the limitation included in defendant's filed tariff or schedules. As quoted, it limits recovery to the amount paid for service (here concededly $189.84) in all claims for "errors or omissions in the making up or printing of its directories or in accepting listings * * *." Plaintiffs say that this provision is not applicable because the "mislisting" here was not merely in the directories but was continued at the toll centers for the long distance and information operators. Nevertheless, and as already indicated, all of the difficulty arose out of the erroneous listings in the two directories, and the reprints furnished to the operators were merely continuations of the original errors and negligence. These facts do not make the limitation inapplicable. We must proceed to consider the validity and effect of the provision.

■ Defendant is subject to the provisions of our law establishing the Public Service Commission and to its lawful regulations, insofar as its intrastate business is concerned. Ch. 386 and Ch. 392, RSMo 1959, V.A.M.S. It is specifically required to file its rate schedule, Section 392.220, sometimes referred to as a "General Exchange Tariff." The present limitation was included in defendant's Rules and Regulations applicable to its customers' contracts. Our statutes constitute a complete system for the regulation of public utilities.

■ We find that by the weight of authority such limitations of liability are upheld as binding upon subscribers, chiefly upon the theory that when so filed under authority of law, and unless found to be unreasonable, they become a part of the law. In this view it makes no difference whether the customer knows of the limitation or not. The cases further reason that, since the utility is strictly regulated in its rights and privileges, it should likewise be regulated to some extent in its liabilities, and that such limitations are at least indirectly considered and involved in establishing its rates. These principles are enunci-

ated and elaborated in the following cases: McTighe v. New England Tel. & Tel. Co., CA 2, 216 F.2d 26; Cole v. Pacific Tel. & Tel. Co., 112 Cal.App.2d 416, 246 P.2d 686; Wilkinson v. New England Tel. & Tel. Co., 327 Mass. 132, 97 N.E.2d 413; Correll v. Ohio Bell Tel. Co., 63 Ohio App. 491, 27 N.E.2d 173; Riaboff v. Pacific Tel. & Tel. Co., 39 Cal.App.Supp.2d 775, 102 P.2d 465; Western Union Tel. Co. v. Esteve Brothers & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094; Georges v. Pacific Tel. & Tel. Co. (D.C.Or.), 184 F.Supp. 571; Russell v. Southwestern Bell Tel. Co. (D.C.Tex.), 130 F.Supp. 130; Bird v. Chesapeake & Potomac Tel. Co. (D.C.Mun.App.), 185 A.2d 917. Esteve, supra, involved the sending of a cablegram, and thus was based on different facts, but it is often cited as laying down the basic principles. Limitations of liability for errors in connection with classified advertising on the "Yellow Pages" in a directory are placed upon a somewhat different basis; as to that, it being a matter of private contract, the parties may validly agree upon such limitation as they choose. Baird v. Chesapeake & Potomac Tel. Co., 208 Md. 245, 117 A.2d 873; Georges v. Pacific Tel. & Tel. Co. (D.C. Or.), 184 F. Supp. 571; Smith v. Southern Bell Tel. & Tel. Co., 51 Tenn.App. 146, 364 S.W.2d 952. The cases further indicate that, although claims such as the present one arise basically out of subscription contracts, it makes no difference whether the action is filed for breach of contract or in tort. Baird, supra.

We look now at such Missouri cases as are available, largely by way of analogy. In State ex rel. Western Union Tel. Co. v. Public Service Comm., Banc, 304 Mo. 505, 264 S.W. 669, 35 A.L.R. 328 (1924), the Court upheld the limitations of liability for errors in or nondelivery of messages, as printed upon the blanks of the telegraph company. Three rates were provided, namely, for unrepeated messages, repeated messages, and valued messages, with a scale of liability fixed accordingly. The rates and rules had been filed with the

Public Service Commission under the recently enacted law. The Commission had ordered the company to cease using such blanks and the circuit court had affirmed the order. This Court held the limitations valid, regarding them essentially as a liquidation of damages and not as an exemption from negligence; it further noted that, since the regulations had not been declared unreasonable as an integral part of the rates, they had become a part of the Missouri law. Therein the Court followed the ICC rulings and the federal cases construing the federal act, much of the content of which had been incorporated into our act. There are obvious differences in the limitations used there and those in our case, but the later cases seem to regard the differences as nonessential. These principles were again announced in Kaumans v. Western Union Tel. Co., 220 Mo.App. 956, 272 S.W. 1058, where the limitation of liability on an unrepeated message was enforced. The case of Mitchell v. Southwestern Bell Tel. Co., Mo.App., 298 S.W. 2d 520, was an action for damages for the breach of an advertising contract; the directory had listed an incorrect telephone number in a classified advertisement. The Court held that the contract limitation (i. e., to the amount paid for the advertisement) was valid and enforceable; that, as already indicated, is a somewhat different situation from ours, it being strictly a matter of private contract. In Williams v. Western Union Tel. Co., 218 Mo.App. 364, 275 S.W. 570, the limitations placed on file by the Western Union seem to have been held valid, relying on the Public Service Commission case, supra. The applicability of the opinion may be questioned because the message there was interstate. We have seen no Missouri case which is precisely in point, but we also find that there is nothing in them which indicates a departure from what seems to be the rather clear weight of authority in other jurisdictions.

Plaintiffs cite the cases of Muskegon Agency, Inc. v. General Tel. Co., 340 Mich.

472, 65 N.W.2d 748; Hamilton Employment Service, Inc. v. New York Tel. Co., 253 N.Y. 468, 171 N.E. 710; and Lane v. New York Tel. Co., 7 A.D.2d 702, 179 N. Y.S.2d 536. All involved limitations in telephone contracts where suits had been filed for erroneous listings. In Muskegon, supra, the question arose upon a ruling on the pleadings; at the time of an increase in plaintiff's telephone facilities the company had assigned to it an additional number which proved to be one long used by a bank. The Court stated that defendant's acts were not those "involving errors or omissions in listings," but rather the assigning to plaintiff of a number already in use. So noting, it held that the limitations were not effective as a defense to plaintiff's action in tort, and that the Public Service Commission had no jurisdiction over the controversy after damage had accrued. The case may be distinguishable from ours on the facts; if not, it seems to be contrary to the great weight of authority. The Hamilton and Lane cases, supra, as we read them, uphold such limitations as contained in telephone regulations or schedules except as to "gross negligence or willful misconduct." The Court also noted in Hamilton that "complete freedom from error is practically impossible."

So much for the authorities construing the limitations on defendant's liability. At this point we note defendant's contention that this suit is a collateral attack upon the limitation provisions. The cases cited by defendant on this point are not at all persuasive, for they involve widely different facts. The Public Service Commission had and has the authority to determine the reasonableness of the defendant's rates and of the regulations and limitations promulgated as a part thereof. Its determination in that regard may only be reviewed in the method provided by statute. The courts have jurisdiction of a suit for damages based on negligence in which a determination of the legal validity and the applicability of such provisions to a given state of facts is required. If this

were not true, we would not find as we do such a large number of cases in which the courts throughout the country have assumed jurisdiction. And see, generally, Southwestern Public Service Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 353 P.2d 62, and cases cited.

 As already indicated, there is authority to the effect that, although such limitation provisions are generally valid and enforceable, they do not exempt a defendant when its conduct has been wanton or willful. We agree with that principle. Wilkinson v. New England Tel. & Tel. Co., 327 Mass. 132, 97 N.E.2d 413; Hamilton, supra; Lane, supra; and see Restatement of Contracts, Ch. 18, pp. 1079–1080, §§ 574, 575, where it is stated that "A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in § 575 * * *. § 575(1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal, * * *." And see, by analogy, Alabama Great Southern RR Co. v. Louisville & N RR (DC Ala.), 127 F.Supp. 363, rev. on other grounds, 5 Cir., 224 F.2d 1, 50 A.L.R.2d 1302; Friedman, Adm'x v. Lockheed Aircraft Corp. et al. (DC N.Y.), 138 F.Supp. 530. We note that the two New York cases just cited hold that the limitation is not applicable to "gross negligence" or willful misconduct. Our Missouri courts, generally, do not distinguish between negligence and gross negligence, as such, since they do not recognize *degrees* of negligence. Reeves v. Lutz, 179 Mo.App. 61, 162 S.W. 280; Reed v. Western Union Tel. Co., 135 Mo. 661, 37 S.W. 904, 34 L.R.A. 492; Brown v. Publishers: George Knapp & Co., 213 Mo. 655, 695, 112 S.W. 474; Young v. St. Louis, I M & S R Co., 227 Mo. 307, 127 S.W. 19; Murray v. De Luxe Motor Stages of Ill., Mo.App., 133 S.W.2d 1074; Ramel v. Kansas City Public Service Co., Mo.App., 187 S.W.2d 492; Harzfeld's, Inc.

v. Otis Elevator Co. (DC Mo.), 116 F. Supp. 512. We conclude that the limitation of defendant's liability was and is effective if defendant's conduct was merely negligent, but that it does not constitute an exemption for willful and wanton conduct. In further considering defendant's conduct we must look primarily at the authorities dealing with punitive damages, for it is there that most of the delineations appear.

 The acts of a defendant which justify the imposition of punitive damages are those which are willful, wanton, malicious or so reckless as to be in utter disregard of the consequences. Such acts are clearly distinguished from negligence. While they need not always include an intent to do harm, they must show such a conscious disregard for another's rights "as to amount to willful and intentional wrongdoing." State ex rel. Kurn v. Hughes, 348 Mo. 177, 153 S.W.2d 46, 53; Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570; Plant v. Thompson, 359 Mo. 391, 221 S.W.2d 834; McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704; Brisboise v. Kansas City Public Service Co., Mo., 303 S.W.2d 619; Harzfeld's, Inc. v. Otis Elevator Co. (DC Mo.), 116 F.Supp. 512. We certainly do not commend defendant's long continued inattention to the complaints of these plaintiffs or to its own admitted errors; we hold, however, that its acts constituted negligence, exaggerated though it may have been, and that, *as a matter of law,* the evidence was not sufficient to establish willful, wanton or reckless conduct within the meaning of the authorities. In that connection we have not found that in any action against a telephone company for error or mistake, the court has held the conduct to be willful, malicious or reckless. At least three have specifically held that it was not, and have designated it as negligence. Russell v. Southwestern Bell Tel. Co. (DC Tex.), 130 F.Supp. 130; Georges v. Pacific Tel. & Tel. Co. (DC Or.), 184 F.Supp. 571; Stein v. Diamond State Tel.

Co., 4 W.W.Harr., Del., 185, 146 A. 737. While the facts in all such cases differ, the total absence of cases approving a submission of punitive damages is significant. We hold here that there was no conduct against which the limitation would be inapplicable and, by the same token, that the issue of punitive damages was improperly submitted.

One point remains. Defendant claims that no actual damages were proven within the rulings of the cases establishing the requirements for proof of loss of profits, and that a verdict should have been directed for it. Mitchell v. Southwestern Bell Tel. Co., Mo.App., 298 S.W.2d 520; Tnemec Co. v. North Kansas City Development Co., Mo., 290 S.W.2d 169; Fuchs v. Curran Carbonizing & Engineering Co., Mo.App., 279 S.W.2d 211; Garcia v. Mountain States Tel. & Tel. Co. (CA 10), 315 F.2d 166; Levy v. Southern Bell Tel. & Tel. Co., La.App., 172 So.2d 371; Shealy's v. Southern Bell Tel. & Tel. Co. (D. C.S.C.), 126 F.Supp. 382. These cases hold that such damages must be proven with reasonable certainty and that the evidence must not leave the matter to speculation. The evidence here on at least two items of supposed loss of profits was speculative; these included the loss of a sale of "bomber tires" for which no specific price was shown to have been agreed upon, and the supposed loss of business from a Mr. Clark on which the evidence was wholly indefinite and speculative. The income tax returns of plaintiffs were of no value, since all of their business operations, including the service station, farms, and cattle raising, were apparently combined, and there was no evidence to show the reason for any total net decline in income. One item was shown with sufficient definiteness to require a submission of actual damages. That came from the testimony of Mrs. Charles Fink that she had tried on two separate occasions to call plaintiffs to have them come out and fill their farm gasoline tanks and that she was told by the operator on each occasion that there was no such telephone listing. The amount of gasoline to be ordered was reasonably certain and the profit per gallon to plaintiffs was reasonably certain. The item probably would not have exceeded $30. Plaintiffs' counsel estimated in his argument to the jury that the actual damages proven were "about $150.00." The testimony of Mr. Warner that there were fewer incoming long distance calls simply cannot be translated into proof of any specific damage. We hold that there was some evidence of actual damages and that a verdict could not have been directed for the defendant. We do not know what the evidence may show upon a retrial, if there is one. If the issue of actual damages is hereafter submitted to the jury, there must be a limitation upon the maximum recovery as indicated in this opinion. What we have said eliminates the necessity of discussing any claim of excessiveness.

The order of the trial court granting a new trial is affirmed, and the cause is remanded for further proceedings in conformity with this opinion.

FINCH, P. J., and DONNELLY, J., and MOSS, Sp. J., concur.