Charles E. OVERMAN and Bennett
Massey, d/b/a AAA Plumbing
Co., Appellants,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, Respondent.

No. WD 34936.

Missouri Court of Appeals,
Western District.

June 12, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
July 31, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Jeremiah D. Finnegan, Thomas B. Sullivan, III, Russell D. Jacobson, Kansas City, for appellants.

Ann Mesle and John W. Kelly, Jr., Kansas City, for respondent; Leo E. Eickhoff, Jr., St. Louis, of counsel.

Before PRITCHARD, P.J., and NUGENT and LOWENSTEIN, JJ.

PRITCHARD, Presiding Judge.

According to plaintiffs' second amended petition, they seek damages from defendant under Count I, in the amount of $750,000, because of defendant's refusal to list their advertisement and listing as "AAA Plumbing Co.", in defendant's yellow pages, white pages, or directory assistance of its telephone directories from 1974 through 1978. Defendant has agreed that a final order of the Public Service Commission (as affirmed by the Circuit Court of Cole County, Missouri) established its liability for compensatory damages, which would have to be proved and determined by a jury (under Count I). No issue is presented as to Count I.

In Count II, plaintiffs incorporated factual allegations of Count I, and pleaded that defendant's acts "were done intentionally, wantonly, maliciously, and without just cause or excuse, so as to justify the imposition of punitive damages in the sum of Ten Million Dollars ($10,000,000)", for which judgment was prayed. In Count III, plaintiffs asked the court to fix a reasonable counsel or attorney's fee in addition to any damage alleged in Counts I and II, and that the same be taxed as costs in this action in accordance with § 392.350, RSMo 1978.

Defendant filed its motion for partial summary judgment as to Count II of plaintiffs' second amended petition upon the grounds of its suggestions in support of the motion that § 392.350 (authorizing imposition of attorney fees) does not authorize the imposition of punitive damages additionally to an award of attorney fees. The trial court sustained the motion for partial summary judgment as to the claim for punitive damages in Count II, upon

grounds stated in an accompanying letter, here paraphrased in part: that plaintiffs were knowingly asserting claims in conjunction with liability for losses and damages as provided in § 392.350; the language of Count I refers to Chapter 392 governing utilities and their regulation by the Public Service Commission, and also refers to findings of facts and legal conclusions of the Commission and the Circuit Court of Cole County, Missouri; Counts II and III adopt the language of Count I; "Plaintiff has sought the advantages of Chapter 392 and its penalty provision, but at the same time, claims in Count II, that it is entitled to another and separate punitive damage claim. In essence, this is a duplication of recovery because Section 392.350 provides for the assessment of a penalty when an offending utility may be required to pay the attorney fee of a damaged party for the 'willful' acts of the utility. Here, to permit Plaintiff (sic) to proceed on its Second Amended Petition would be allowing for a double recovery; the punitive damage claim as provided by Count II because of Defendant's intentional conduct, and a second penalty which could require the payment of Plaintiffs' attorney fees if Defendant's conduct is found to be 'willful'. Having chosen to pursue its cause of action under Chapter 392, Plaintiff is bound by the provisions of that chapter as it relates to the recovery for compensatory damages and attorney fees. Plaintiff is not entitled to a separate independent additional penalty as requested in Count II of its Second Amended Petition." After their motion to reconsider the partial summary judgment was overruled, plaintiffs perfected this appeal, upon which the basic issue is whether they may pursue a common law claim for punitive damages along with a claim for actual damages and for attorney fees under Chapter 392. The order granting partial summary judgment was designated to be final for purposes of appeal.

The facts are developed by the pleadings and by findings of the Public Service Commission, the order of which was affirmed by the Circuit Court of Cole County, Missouri, from which judgment no appeal was taken.

Charles E. Overman, with two brothers-in-law, started doing business as a plumber in 1947 as AAA Plumbing and Sewer Service, so listing it in defendant's yellow pages. The name was changed to AAA Plumbing Company in 1948 and 1949, and it was so advertised in the yellow pages. In 1950, the name was changed to A–ABA Plumbing Company. In 1951, the name was changed back to AAA Plumbing Company and was continued to be so advertised from then through 1961, when Overman and Massey formed their partnership and thereafter up to the publication of defendant's 1974 yellow pages, at which time it refused plaintiffs' listing and continued to do so through 1978, although during all the time since 1951, plaintiffs continued to do business as AAA Plumbing Co.

On July 19, 1963, defendant adopted a new tariff section, now numbered General Exchange Tariff, Section 7.3.5, which provided: "No name or phrase will be listed which in the opinion of the Telephone Company is likely to mislead or deceive the public. No name, whether actual or assumed, or phrase will be listed when in the opinion of the Telephone Company the name or phrase is requested for advertising purposes or to gain a special position or prominence in the directory * * *."

Defendant did not begin to enforce this rule until about 10 years later—beginning in the Spring of 1973, prior to the publication of its 1974 directories. It then instigated a statewide program to eliminate those listings which it believed violated the 1963 tariff, because an increase of the listings resulted in confusion to the public as well as difficulty in alphabetizing the directory. The program was first applied to plumbing contractors and sewer services because they contained a large number of multiple "A" listings.

Overman was contacted by defendant's representative, Gary Ring, by telephone in the fall of 1973, and was advised that defendant would no longer accept the partnership listing as AAA Plumbing Co. Ov-

erman was offered an alternative listing of "Overman AAA Plumbing Co." (and according to Ring the alternatives of "Triple A", and "Overman, C.E."), which alternatives were refused. In 1975, 1976 and 1977, a listing as "Overman, C.E." was inserted under the plumbing contractors' classification in the yellow pages without Overman's authorization. The Commission found that although plaintiffs had never registered AAA Plumbing Co. as a fictitious name nor incorporated it in that name, plaintiffs as partners, at least since 1961, had established it as a trade name in the plumbing industry in the Kansas City area, and that their stationery, envelopes, statements, trucks, business cards, shop signs, bank accounts, plumbing licenses and advertising (including yellow pages to 1974) used the name AAA Plumbing Company, under which they did business since 1974 despite not being so listed in the yellow pages.

Overman agreed with his brother-in-law, Smith, in 1947, that the "AAA" in the business name would place it near the beginning of the alphabetical listings in the plumbers' classification as one way of getting started in the plumbing business. Defendant was not aware of that history in 1973 when it formed its opinion to exclude plaintiffs for the listing in 1974 and in subsequent directories. The Commission found (and concluded) that defendant's actions in excluding plaintiffs from the 1974, 1975, 1976 and 1977 directories were arbitrary, unreasonable and capricious, that it violated § 392.200(3), and that "had it merely perused its prior directories in 1973, for the previous years, it would have satisfied its own Business Office Practice, Part V, Section 9, Paragraph II, 3, as paraphrased in its General Directory Circular No. 37", which " * * * states that the name by which a customer is known to the general public or the name under which a customer regularly conducts business is the principal governing factor in determining the acceptability of a name to be shown in a listing." The Commission ordered defendant to accept plaintiffs' business listing as AAA Plumbing Co. in its future directo-

ries and its Directory assistance, to be effective July 7, 1978.

As to the issue of exclusiveness of an award of attorney's fees to be taxed and collected as a part of the costs in the action, in case of recovery for all loss or damage resulting from a telephone or telegraph company's unlawful act, if the court shall find that the act or omission was willful, the case of *De Paul Hospital School of Nursing v. Southwestern Bell Telephone Company*, 539 S.W.2d 542 (Mo. App.1976), is instructive. It was there contended by Bell that the trial court erred in awarding attorney's fees under § 392.350 because the evidence failed to justify a finding that its acts in discriminating against the Nursing School (in charging it rates which were wrong) were "willful" under that statute. Although the *De Paul* case did not involve a claim for punitive damages, the court considered the elements of that claim as measured by what was definitively meant by the provision for attorney's fees for *willful* acts under § 392.-350. The court perceived three levels of intent to which the term "willful" may refer (criminal, civil, and that necessary to justify punitive damages). The court said, p. 548, " 'But where the statute relates to a civil rather than a criminal penalty the meaning of the word connotes only voluntary and intentional action as contrasted with accidental ... the word "willful" [does] not require proof of an evil intent but that it is sufficient if the failure to act was either intentional or plainly indifferent to the requirements of the statute.' (Citing cases.) Between these poles, but more closely related to the criminal standard, lies the level of intent necessary to justify punitive damages. 'The acts of the defendant which justify the imposition of punitive damages are those which are willful, wanton, malicious or so reckless as to be in utter disregard of the consequences. Such acts are clearly distinguished from negligence. While they need not always include an intent to do harm, they must show such a conscious disregard for another's rights "as to amount to willful and intentional

wrongdoing." ' *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596, 603[15] (Mo.1968)." The court went on to note that the second part of § 392.350 allows the court in its discretion to award attorney fees as costs if such acts or omissions are found to be "willful", and said, " 'Willful' as used in this section is not the level of intent needed for criminal liability or punitive damages in tort cases. The statute does not say 'willful and wanton,' or 'willful and malicious' as would be the case if the legislature intended to apply that high standard. Neither is it the 'willful' of civil statutes which usually denotes that defendant merely intended to do the act. If that were its intended meaning, all overcharges [in the case at bar, all refusals to continue advertising listings] would be willful, and the statute clearly requires that the court make an additional finding in order to justify the imposition of attorney's fees as costs." [Bracketed material added.]

The *De Paul* court went on to state the purpose of § 392.350, p. 549[6]: "We hold that in the context of rate discrimination, 'willful' means either intentionally charging an incorrect rate knowing it was incorrect, or charging a rate when the utility has no reasonable basis for placing the individual consumer within the classification calling for that rate. This construction is consistent with the regulatory scheme of the law which places the burden of charging the correct rate and the correct rate only, upon the utility. Proceedings before the Public Service Commission and the courts to correct and recover for overcharges are, as this case amply demonstrates, prone to be lengthy and expensive. In most cases, the consumer is greatly overmatched by the expertise, legal staff and resources of the utility. This unevenness is somewhat balanced by § 392.350. If the utility elects to defend a challenged rate to the full extent allowed, and the defense it asserts is without reasonable basis in law, the consumer may in proper case recover the attorney's fees as costs."

■ Analogously here, where the defendant has sought to remove plaintiffs' business listing from its directories and plaintiffs have challenged that action before the Public Service Commission where they were successful in securing an order that the "AAA Plumbing Co." listing be continued, the court might well find that its actions in removing the listings were without reasonable basis in law, thus justifying the imposition of attorney's fees *as costs*, thus balancing the legal resources of plaintiffs and defendant. This, of course, would be in the court's discretion, considering the facts that plaintiffs' previous listing had been used in their business for more than 10 years as a valuable advertising means, the long duration of which defendant knew or should have known, which is the further fact it is bound to consider under its own rule (General Directory Circular No. 37) governing the "clean-up" of its directories.

■ It seems rather clear from the De Paul eminently correct analysis of the term "willful" as used in § 392.350, as contrasted to the terms "willful, wanton and malicious" in the remedy of punitive damages, that the provision for attorney's fees in the statute is not a penalty, but rather is a method of equalizing the positions of a utility and a member of the consuming public, as devised by the legislature. In this connection, see these definitions in Black's Law Dictionary, Fifth Edition, p. 1020, "Penalty. An elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment."; p. 1163, "Remedy. The means by which a right is enforced or the violation of a right is prevented, redressed, or compensated."; p. 312, "Costs. A pecuniary allowance, made to the successful party (and recoverable from the losing party), for his expenses in prosecuting or defending an action or a distinct proceeding within an action." These definitions point toward the conclusion that the recovery of attorney's fees, awarded in the discretion of the court under § 392.350, are but a pecuniary allowance to the successful party for his ex-

penses in prosecuting an action, and not as a penalty or a remedy as those terms are defined in Black's Dictionary, supra.

Defendant contends that plaintiffs' claim is a statutory cause of action and their recovery, if any, is limited to only those damages authorized and prescribed by § 392.350, which does not provide for punitive damages. Section 392.200(3) provides, "No telegraph corporation or telephone corporation shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever; * * *." Section 392.350 then follows, allowing recovery for the doing of an unlawful act "for all loss, damage or injury caused thereby or resulting therefrom," and for reasonable attorney fees if the court shall find the act or omission was willful. These are certainly statutory remedies, but it is apparent that they are but codifications of the common law duties of public utilities. See 73B C.J.S. Public Utilities § 7, p. 140: "A public utility has the duty to supply a commodity or furnish service to the public. This duty exists independently of statutes regulating the manner in which it shall do business or of contracts with municipalities or individuals, and is imposed because the utility is organized to do business affected with a public interest and holds itself out to the public as being willing to serve all members thereof. * * *." And, at 73B Public Utilities § 8, pp. 143–145, it is said, "A public utility is obligated by the nature of its business to furnish its service or commodity to the general public, or that part of the public which it has undertaken to serve, without arbitrary discrimination. * * * *Such duties arise from the public nature of a utility, and statutes providing affirmatively therefor are merely declaratory of the common law.*" [Emphasis supplied.]

■ The right to recover punitive damages existed at common law. 22 Am.Jur.2d Damages, § 236, p. 323; 25 C.J.S. Damages § 117(1), p. 1112. The statutes of Chapter 392 neither expressly nor by implication take away the right to recover punitive damages if the right therefor is proved, i.e. that the acts complained of were done wrongfully, intentionally and without just cause or excuse. *Beggs v. Universal C.I.T. Credit Corporation,* 409 S.W.2d 719, 722 [2–4] (Mo.1966). See the discussion as to the exclusiveness of a statutory remedy in *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593, 598 (Mo. banc 1974), quoting from 1 C.J.S. Actions § 6c., p. 976. It was held in the *Hawkins* case that a statute (§ 389.660) governing the duties of a railroad in constructing suitable openings, ditches and drains, on its right-of-way, and providing procedures therefor, did not create a new right or liability or a new remedy which were not existing at common law so as to make it exclusive, and therefore respondents had their election as between the common law remedies (trespass and nuisance), and the cumulative, permissive, and alternative remedy under § 389.660. In this case, no alternative remedy is provided by Chapter 392 as would require an election thereof at some stage of the proceedings, but the statutory provisions are merely cumulative to the common law remedies for acts unlawful or for prejudicial disadvantage.

■ It seems rather clear that the cases in this state recognize the propriety of imposing punitive damages against a telephone company ·in a proper case. The court in *Warner v. Southwestern Bell Telephone Company,* 428 S.W.2d 596, 603 (Mo.1968), stated that a tariff limiting the amount of damages for errors and omission (in directories) are generally valid and enforceable, but they do not exempt a defendant when its conduct has been wanton and willful, but the errors and omissions of defendant amounted to mere negligence for which the tariff was applicable, and the submission of the issue of punitive damages was improper. In *Tobler's Flowers v. Southwestern Bell Telephone Company,* 632 S.W.2d 15 (Mo.App.1982), Tobler pleaded in Count III of its petition that the acts and omissions of Bell, in omitting adver-

tisements in the yellow pages, were " 'so grossly negligent' as to indicate deliberate wanton, willful, intentional and malicious conduct compensable by punitive damages". The court found that the uncontroverted facts, on motion for summary judgment, did not justify that claim. In *Engman v. Southwestern Bell Telephone Company*, 591 S.W.2d 78 (Mo.App.1979), the summary judgment was reversed and the case was remanded for trial upon the allegation that there was a tortious, willful invasion of plaintiffs' privacy by defendant in entering their home for the purpose of removing telephones. [Note that the judgment for defendant was affirmed on further appeal, *Engman v. Southwestern Bell Telephone Company*, 631 S.W.2d 98 (Mo. App.1982), on the issue of the intentional tort of invasion of privacy.] Note also *Gonzales v. Southwestern Bell Telephone Company*, 555 S.W.2d 219 (Tex.Civ.App. 1977), cited in the first *Engman* opinion. In none of these cases is it ruled that a telephone company is not liable for its intentional torts, and thus for resultant punitive damages.

■ In its Point I.A.1., defendant says that the remedy for violations of § 392.200 neither expressly nor impliedly includes punitive damages, i.e. § 392.350. Although that is true, the latter section provides that any person or corporation affected by an unlawful act may recover "all loss, damage or injury caused thereby or resultant therefrom." It does not exclude the preexistent remedy of punitive damages existent at common law, or limit the damages recoverable, as have other states as listed in defendant's appendix to its brief. The only conclusion is that the Missouri General Assembly has chosen not to act in specifying or limiting the types of damages recoverable for violations of § 392.200, or of the common law. In this connection, defendant cites *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944 (Mo. banc 1982), which held (on a four to three decision) that no private cause of action was created by § 379.118, requiring an insurance company to give written notice setting forth clearly and specifically the actual reason for nonrenewal of auto-

mobile policies. That case has no bearing upon the issue here of plaintiffs' maintenance of a claim for punitive damages.

■ Defendant next says that punitive damages are not recoverable under the Missouri statute where alternative relief is provided. It argues the maxim "expressio unius est exclusio alterius" meaning the mention of one thing (allowance of attorney's fees where a defendant's act is found by the court to have been willful) implies the exclusion of the other (allowance of punitive damages). The contention is partly answered in the DePaul case, supra, holding that a "willful" act, if found, is not the same level of intent as a "willful and malicious" act required for the imposition of punitive damages. Of further importance here is that § 392.350 authorizes the recovery of *all damages* and injury without any limitation. Certainly the term "all damages" would include those punitive in nature, and any allowance of attorney fees, in the discretion of the court, would be additional thereto as a means of equalizing the disparate positions of a utility and a consumer in maintaining or defending an action under the *DePaul* case, supra.

Defendant says, applying the above maxim, that the Missouri General Assembly, having expressly created the exceptional remedy of attorney fees for "willful" violations of the provisions of Chapter 392, has by virtue of that maxim *excluded* any additional remedies, including punitive damages, for the same willful conduct. The argument not only ignores the distinction in the level of intent for the purpose of adjudging attorney fees and that for imposing punitive damages, but it fails to perceive that the legislature could have done the converse: i.e., limited the relief to actual damages and rejecting the concept of punitive damages for intentional torts. The contentions are overruled.

Defendant asserts that "Judicial construction of the Interstate Commerce Act, § 8, from which § 392.350 was derived, indicates that the language within § 392.350 was intended not to include the awarding

of punitive damages." It is true that the case of *Pennsylvania Railroad Co. v. International Coal Mining Co.*, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446 (1913), construed 49 U.S.C. § 8. as providing only for actual damages intended as compensation to the injured party, and the court said, 33 S.Ct. p. 897[3], *"There are many provisions in the statute for imprisonment and fines. On the civil side the act provided for compensation, not punishment. * * ** Congress had not then and has not since given any indication of an intent that persons not injured might, nevertheless, recover what, though called damages, would really be a penalty, *in addition to the penalty payable to the government."* The court was speaking of 49 U.S.C. § 8 (originally enacted 24 Stat. 382, February 4, 1887), which has been revised in a comprehensive enactment, Subtitle IV-Interstate Commerce, 49 U.S.C.A. § 10101, et seq. The provision for a common carrier's liability for an act or omission in violation of the subtitle for damages sustained by a person is contained in 49 U.S.C.A. § 11705(b)(2), and 49 U.S.C.A. § 11705(d)(3) carries forward the provision for attorney's fees: "The district court shall award a reasonable attorney's fee as a part of the damages for which a carrier is found liable under this subsection. The district court shall tax and collect that fee as a part of the costs of the action." Civil and criminal penalties are extensively provided for in 49 U.S.C.A. § 11901, et seq., *all payable to the United States Government*, and this is the distinguishing feature of the Interstate Commerce Act and § 392.-350, which does not provide for such extensive penalties for every infraction, but only generally in one section, § 392.360, for violation of sections 392.190 to 392.360, or for failure to comply with any order or decision of the commission. As stated, § 392.350 provides for all loss, damage or injury resulting from an act found to be unlawful, and nowhere is a legislative intent indicated to limit recovery to actual damages. The federal Interstate Commerce statutes are not persuasive on this issue, in view of their comprehensive provisions for civil and criminal penalties payable to the government.

■ Defendant says that plaintiffs' claim for punitive damages for incorrectly applying General Exchange Tariff § 7.2.5 is against the public interest in that it could dissuade telephone companies from making efforts to improve the directories. This contention is for the trier of the fact to consider upon remand as it goes only to defendant's justification for its acts which are charged to have been willful, malicious and without just cause or excuse.

■ Plaintiffs say that the trial court erred in denying their motion for summary judgment on the issue of defendant's liability for actual damages, punitive damages and attorney's fees. Suffice it to say that the *denial* of a motion for summary judgment is not a final, appealable judgment, the issues on the motion being thereafter for trial. *Kaufman v. Bormaster*, 599 S.W.2d 35, 37[1–3] (Mo.App.1980).

The judgment is reversed and the case is remanded for trial.

All concur.