**STATE of Missouri, ex rel. LACLEDE GAS COMPANY, Respondent,**

v.

**PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI,**
Appellant.

No. WD 72179.

Missouri Court of Appeals, Western District.

Oct. 19, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2010.

Application for Transfer Denied Jan. 25, 2011.

Steven C. Reed, Jaime N. Ott, Jefferson City, for Appellant.

Michael C. Pendergast, Rick E. Zucker, St. Louis, MO, for Respondent.

Before LISA WHITE HARDWICK, C.J., JAMES EDWARD WELSH, J., and CHARLES E. ATWELL, Sp.J.

JAMES EDWARD WELSH, Judge.

This appeal involves a dispute over whether the Public Service Commission unlawfully and unreasonably rejected a tariff filing by Laclede Gas Company to recover the gas cost portion of its bad debts through a mechanism known as a purchased gas adjustment. On appeal, Laclede contends that the Commission's decision rejecting its tariff was unlawful and unreasonable because (1) the gas cost portion of bad debt is a gas cost, (2) the evidence established that Laclede did not exercise substantial influence over bad debt levels, and (3) the inclusion of unpaid gas costs in the purchased gas adjustment mechanism does not constitute unlawful single-issue ratemaking. We affirm.

On July 9, 2008, Laclede filed a proposal with the Commission asking the Commission to allow it to amend its tariffs to use the purchased gas adjustment mechanism to recover the gas cost portion of its bad debts. Currently, Laclede is able to seek recovery of its bad debts through its general base rate. Indeed, as part of an overall rate case, the Commission determines the amount of bad debt expense that a company is likely to incur. The Commission then considers that amount of bad debt expense, along with the other expenses and revenues, to establish a rate that will allow the company to recover its cost of service from its customers. The amount of bad debt that a company is allowed to recover in a rate case, however, is just a forecast of what those expenses will be. If the actual level of debt rises above the amount allowed in the rate case, a company runs the risk of not recovering all of its costs in regard to the bad debt. Thus, Laclede sought to amend its tariffs to use the purchased gas adjustment mechanism to recover from its customers the difference between the gas cost portion of its actual bad debt write-offs and the gas cost portion of the bad debts write-offs that are currently being recovered through its base rate.

The Commission held an evidentiary hearing, and, after the hearing, the Commission rejected Laclede's tariff. The Commission concluded that it was unlawful to allow Laclede to recover the unpaid gas cost portion of the bad debts through the purchased gas adjustment mechanism because it would constitute improper single-issue ratemaking. The Commission also concluded that Laclede's bad debt expenses are not gas costs that can be recovered through the purchased gas adjustment mechanism. Further, the Commission found that, because Laclede could exercise substantial influence over the level of bad debts it recognizes in its books, Laclede's bad debt expenses are not costs that Laclede could recover through the purchased gas adjustment mechanism. Laclede filed a petition for writ of review of the Commission's decision with the circuit court, and the circuit court reversed the Commission's decision and set it aside as unlawful. The Commission, thereafter, filed this appeal.

Because, however, we review the decision of the Commission rather than the decision of the circuit court, Rule 84.05(e) requires that the party aggrieved by the agency decision file the appellant's brief and that the party aggrieved by the circuit court's decision file the respondent's brief. Thus, Laclede filed the appellant's brief in

this case, and the Commission filed the respondent's brief. This court also permitted the Office of the Public Counsel to file a brief as *amicus curiae*.

Our review of the Commission's decision has two steps: first we must determine "whether the Commission's order is lawful, and second, whether the order is reasonable[.]" *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n,* 186 S.W.3d 376, 381 (Mo.App.2005). Lawfulness is determined by whether or not the Commission had the statutory authority to act as it did. *Id.* at 382. Reasonableness depends on whether or not "(i) the order is supported by substantial and competent evidence on the whole record, (ii) the decision is arbitrary, capricious or unreasonable, or (iii) the Commission abused its discretion." *Id.* "The party seeking to set aside the Commission's order has the burden to prove by clear and satisfactory evidence that the order was unlawful or unreasonable. § 386.430[, RSMo 2000]." *State ex rel. BPS Tel. Co. v. Mo. Pub. Serv. Comm'n,* 285 S.W.3d 395, 401–02 (Mo.App. 2009).

In its first point on appeal, Laclede contends that the Commission's decision rejecting the tariff was unreasonable because the gas cost portion of bad debt is a gas cost that can be recovered through the purchased gas adjustment mechanism. We disagree.

The purchased gas adjustment mechanism essentially allows a gas company to recover the costs it incurs to purchase natural gas by means of a separate charge on the customer's bill. The Commission's Regulation, 4 CSR 240–13.015(1)(S), defines the purchased gas adjustment mechanism as "the adjustment procedure approved by the commission to recognize variations in the cost of purchased gas[.]" By allowing use of the purchased gas adjustment mechanism, the Commission "is necessarily determining that due to the unique nature of gas fuel costs, including the fact that natural gas is a natural resource, not a product which must be produced with labor and materials, the fuel cost component of the rate must be treated differently than other components because it is different." *State ex rel. Midwest Gas Users' Ass'n v. Pub. Serv. Comm'n,* 976 S.W.2d 470, 480 (Mo.App.1998). The Commission, therefore, has provided "a mechanism which allows fuel cost increases to be passed on, and fuel cost savings to be passed on, in the amount incurred." *Id.* In other words, a company passes on the increases or decreases in the cost of gas to their customers through the use of the purchased gas adjustment mechanism.[1] This mechanism allows a company to adjust its rates in proportion to the rate that the company had to pay for the gas from its suppliers.[2] *Id.* at 472.

In this case, Laclede is attempting to use the purchased gas adjustment mecha-

---

1. Indeed, Regulation 4 CSR 240–40.018(1)(B) recognizes the purpose for the purchased gas adjustment mechanism. That regulation says: "Financial gains or losses associated with price volatility mitigation efforts are flowed through the Purchased Gas Adjustment (PGA) mechanism, subject to the applicable provisions of the natural gas utility's tariff and applicable prudence review procedures." 4 CSR 240–40.018(1)(B).

2. The purchased gas adjustment amount that a company charges customers can change several times throughout the year to reflect the changes in the amount a gas company must pay to purchase natural gas for its customers. Moreover, a company's purchased gas adjustment charges are subject to an actual cost adjustment by which Commission staff reviews the company's gas purchases for prudence and adjusts the company's rates to ensure that those gas costs are simply passed through to customers dollar for dollar.

nism to recover the cost of the gas supplied to customers who failed to pay their bills. In denying Laclede's request to amend its tariff, the Commission concluded:

> [B]ad debt expense is not a part of Laclede's cost to purchase gas. Laclede does not make a payment to anyone when it incurs bad debt, rather it merely makes an accounting entry to recognize a loss of revenue. An increase or decrease in Laclede's level of bad debt has no effect on the amount its wholesale gas suppliers charge Laclede for the natural gas it purchases. Simply put, bad debt is not a gas cost.

We agree.

The purchased gas adjustment mechanism is meant to account for fluctuations in the gas market. It merely provides a mechanism to allow a company to pass on increases or decreases in the cost of gas from a set base cost to its customers. Laclede's bad debt expense does not affect the rate that Laclede is charged for gas. In other words, the base cost of gas does not increase or decrease based upon the amount of bad debt Laclede incurs. Recovering gas costs associated with bad debts are simply not the type of costs for which the purchased gas adjustment mechanism is meant to be used. Gas costs associated with bad debts are of an entirely different character than gas expenses that are currently passed through to customers under the purchased gas adjustment mechanism.[3]

Laclede contends that no logical distinction exists between gas costs already recovered through the purchased gas adjustment mechanism and gas costs associated with bad debt. Laclede asserts that "the result of all of these adjustment mechanisms is that customers end up paying an amount that is closer to the actual costs incurred to provide them utility service." We fail to see how passing on the costs of gas used by customers who do not pay their bills to customers who do pay their bills results in the customers "paying an amount that is closer to the actual costs incurred to provide them utility service." Laclede is merely trying to make paying customers pay for the gas usage of nonpaying customers and is attempting to remove the risk of bad debt from itself and placing it instead on the customers.[4]

3. Laclede asserts that the purchased gas adjustment mechanism is also used to recover other gas related costs, such as increases and decreases in the amount of financial hedging instruments purchased by Laclede to provide price protection for its customers, increases and decreases in carrying costs or interest charges incurred by Laclede to maintain gas supply inventories, increase or decreases in customer usage due to weather, increases and decreases in the revenue achieved by Laclede through its off-system sales and capacity release efforts, and the increases and decreases in the savings reached by Laclede under its Gas Supply Incentive Plan. Laclede contends that these costs can be recovered through the purchased gas adjustment mechanism even though none of these costs have a direct affect on the amount that wholesale gas suppliers charge it for gas. Indeed, in its order, the Commission recognized that the purchased gas adjustment allows Laclede to recover the costs it incurs to purchase natural gas, *as well as certain other gas related costs*, from its customers. According to the Commission, "Laclede's current [purchased gas adjustment] tariff allows it to recover the commodity and related transportation costs it must incur to obtain the natural gas it supplies to its customers." In reaching our conclusion that gas costs associated with bad debts are not recoverable through the purchased gas adjustment mechanism, we offer no opinion whether other gas related expenses (including those just noted) may be recovered as a gas cost through the purchased gas adjustment mechanism.

4. General rates, which now include bad debt allowances, should vary the return on equity in direct proportion to risk. If risk to a utility would be reduced by shifting bad debts to

Again, these are not the type of gas costs for which the purchased gas adjustment mechanism was intended to be used. Bad debt is more accurately described not as a cost but as a loss of earned revenue. It bears no relationship to the cost of fuel, let alone the fluctuation of fuels costs that the purchased gas adjustment is intended to ameliorate.

Further, Laclede has an avenue to seek recovery of its bad debts: through its general rate case. Indeed, in a rate case, the Commission determines the amount of bad debt expense that a company is likely to incur and then considers that amount of bad debt expense, along with the other expenses and revenues, to establish a rate that will allow the company to recover its cost of service from its customers. Bad debt, therefore, is a legitimate part of doing business for which Laclede is allowed to seek recovery from its customers through rates established by the Commission. This is exactly what Laclede has done in the past. The Commission already considered Laclede's bad debt expense in the last general rate case, and Laclede is already recovering bad debt expenses, including the gas cost portion of the bad debts, through its rates established in the general rate case. We recognize that the amount of bad debt that Laclede is allowed to recover in a rate case is just an estimate of what those expenses will be and that the actual level of debt may rise above the amount allowed in the rate case, which necessarily would mean that Laclede would run the risk of not recovering all of its costs in regard to the bad debt. But, such is merely a part of doing business and provides further data for the Commission to consider in Laclede's next rate case.

We, therefore, conclude that the Commission's order rejecting Laclede's tariff was lawful and reasonable. The gas cost

customers, there should be a corresponding

portion of bad debt is a not a gas cost that can be recovered through the purchased gas adjustment mechanism. Because we reach this conclusion, we need not address Laclede's remaining contentions on appeal regarding whether or not the evidence established that Laclede exercised substantial influence over bad debt levels and whether the inclusion of unpaid gas costs in the purchased gas adjustment mechanism constitutes unlawful single-issue rate-making. We affirm the Commission's order.

All concur.

decrease in return on equity.