PUBLIC SERVICE COMMISSION OF the STATE of Missouri, Respondent,

v.

MISSOURI GAS ENERGY, A Division of Southern Union Company, Respondent,

Office of Public Counsel, Appellant.

No. WD 74732.

Missouri Court of Appeals, Western District.

Oct. 23, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 20, 2012.

Application for Transfer Denied Jan. 29, 2013.

Marc Poston, Jefferson City, MO, for Appellant.

Shelley Brueggemann, Jefferson City, MO, for Respondent, Public Service.

Paul Boudreau, Jefferson City, MO, for Respondent, Southern Union Co.

Before JAMES EDWARD WELSH, C.J., THOMAS H. NEWTON, J., and CHARLES E. ATWELL, Sp.J.

JAMES EDWARD WELSH, Chief Judge.

The Office of the Public Counsel (OPC) appeals the Public Service Commission's granting summary determination in favor of Southern Union Company, d/b/a Missouri Gas Energy (MGE), in regard to MGE's Tariff Sheet R–34, which concerned in part MGE's legal liability to its customers in tort. The OPC claims that the Commission's order granting MGE's motion for summary determination is unlawful because it lacks the required public interest determination as required by 4 CSR 240–2.117(1)(E) and lacks sufficient findings and conclusions to support the summary determination. Further, the OPC asserts that the Commission erred to the extent that it allowed MGE's tariff to include an exculpatory clause releasing MGE from liability for any injuries or harm caused by MGE's negligence occurring on customer-owned gas utilization equipment on the customer side of the meter. In particular, the OPC contends that the Commission's order is unlawful and unreasonable in that (1) granting such immunity was beyond the Commission's authority, (2) the Commission's decision violates common law and public policy, and (3) the Commission failed to articulate a rational basis for contradicting a recent order in another case before the Commission, where the Commission rejected a similar provision regarding immunity. We reverse this Commission's decision and remand this case to the Commission for further action consistent with this opinion.

MGE is a natural gas provider to over 500,000 residential, commercial, and industrial customers in 34 counties in Missouri. The Commission is an administrative state agency responsible for the regulation of public utilities, including gas corporations, in Missouri. MGE is subject to regulation

by the Commission. The OPC is an agency of the State of Missouri that represents consumers in proceedings before the PSC and in all appeals of PSC orders.

On October 7, 2010, the Staff of the Commission (Staff) filed a complaint against MGE asserting that the language in MGE's Tariff Sheet R–34 [1] limiting MGE's liability to its customers was unjust and unreasonable and was void and unenforceable as a matter of public policy. The Staff alleged MGE's tariff violated Commission policy as set out in the Commission's Report & Order in GT–2009–0056 (Laclede Order). In GT–2009–0056, the Commission ultimately rejected a tariff sheet proposed by Laclede Gas Company (Laclede) limiting Laclede's liability to its customers, which the Staff asserted in this complaint established policy. Specifically, the Staff alleged the Commission policy was not complied with because MGE's Tariff Sheet R–34 purported to:

(a) ... immunize MGE from all liability, even in cases in which MGE fails to comply with Commission rules and applicable codes and standards;

(b) ... limit MGE's liability even when MGE is negligent in the operation of its system, so that, for example, MGE would not be liable for over-pressuring its system and thereby causing damage to a customer's home and appliances;

(c) ... limit MGE's liability even when MGE has inspected the customer's equipment; and

(d) ... limit MGE's liability even for gross negligence or wanton or willful conduct.

The Staff also asserted that MGE's Tariff Sheet R–34 did not comply with the Commission's Natural Gas Safety Rules at 4 CSR 240–40.030(10)(J) and (12)(S), in that MGE's Tariff Sheet R–34 purported to "eliminate MGE's duty to test for leakage in a competent way, ensure compliance with industry standards and local codes," warn of potential hazards, and discontinue service to a customer when equipment was unsafe.

MGE filed its answer to the Staff's complaint on November 12, 2010. On November 29, 2010, MGE filed a motion to dismiss the Staff's complaint.

On December 1, 2010, the Staff filed its response to MGE's motion to dismiss and filed a "Motion For Summary Determination" and its suggestions in support, asserting that no genuine issues of material fact were at issue. In addition, the Staff stated that it was entitled to relief as a matter of law and that "the public interest demand[ed] that [the] Staff's complaint be sustained." On April 11, 2011, MGE also filed a "Motion For Summary Determination" and its suggestion in support, asserting that no genuine issue of material facts remained in dispute and that such a determination was in the public interest. The OPC filed its suggestions in support of the Staff's motion for summary determination on June 2, 2011. Thereafter, the Commission found the motions for summary determination and the motion to dismiss ready for ruling.

On November 9, 2011, the Commission issued its "Final Decision and Order To File A New Tariff Sheet" (Final Order) with an effective date of November 19, 2011. The Commission granted in part and denied in part both the Staff's and MGE's summary determination motions and denied MGE's motion to dismiss.

---

1. MGE's Tariff Sheet R–34 originally went into effect per Commission order approving the tariff on April 3, 2007. The burden of proof was on the Staff to prove that MGE's tariff, which was already in effect, was unreasonable or otherwise unlawful. § 386.430, RSMo 2000.

The Commission found that Paragraph 1 of MGE's Tariff Sheet R–34 was unjust and unreasonable. This rejected provision stated:

Customer shall save Company harmless from all claims for trespass, injury to persons, or damage to lawns, trees, shrubs, buildings or other property that may be caused by reason of the installation, operation, or replacement of the service line, yard line and other necessary appurtenances to serve customer unless it shall affirmatively appear that the injury to persons or damage to property complained of has been caused by willful default or gross negligence on the part of Company or its accredited personnel.

The Commission determined that this provision made the customer liable to third persons for MGE's conduct and was not supported by public policy. Specifically, the Commission found "[n]o public policy supports making an insurer out of a customer who is powerless—and is not paid—to control those risks."

The Commission also found Paragraph 2 of MGE's Tariff Sheet R–34 to be unjust and unreasonable insofar as it purported to immunize MGE from liability against any allegation of MGE's negligence relating to inspection, leakage, and repair. This partially rejected provision stated:

Company may refuse or discontinue service if an inspection or test reveals leakage, escape or loss of gas on customer's premises. Company will not be liable for any loss, damage or injury whatsoever caused by such leakage, escape or loss of gas from customer's service line, yard line, ancillary lines, house piping, appliances or other equipment.

The Commission determined that this provision immunized MGE from "any liability for any inspection, leakage, and repair on the customer side, on any facts, regardless of causation and culpability." The Commission concluded that "[i]mmunity for conduct more culpable than ordinary negligence [was] against Missouri's public policy" and that "[l]iability for negligence encourages [MGE] to take such safety precautions as are in [MGE's] control, which promotes the public interest."

Further, the Commission found that Paragraph 3 of MGE's Tariff Sheet R–34 was unjust and unreasonable insofar as it purported to immunize MGE from liability against any allegation of MGE's negligence relating to inspection, leakage, and repair. This partially rejected provision stated:

The Company does not own, nor is it responsible for the repair or maintenance of any piping, vents, or gas utilization equipment on the delivery side of the gas meter, its related appurtenances and piping. All piping, vents or gas utilization equipment furnished by the owner/customer of the premises being served shall be suitable for the purposes hereof and the owner/customer of the premises shall be responsible for the repair and maintenance of such at all times in accordance with accepted practice and in conformity with requirements of public health and safety, as set forth by the properly constituted authorities and by the Company. As with any fixture or appurtenance within premises, piping, vents or gas utilization equipment can fail, malfunction or fall into disrepair at any time and as such the owner/customer of the premises being served shall be aware of this fact, and Company shall owe customer no duty to warn of potential hazards that may exist with such facilities on the delivery side of the gas meter, its related appurtenances and piping.

The Commission found that this provision incorporated equipment standards and provided that "conformity with those stan-

dards [was] the customer's duty" and never MGE's duty. Like Paragraph 2 of Tariff Sheet R–34, the Commission concluded that this provision immunized MGE from "any liability for any inspection, leakage, and repair on the customer side, on any facts, regardless of causation and culpability." Further, the Commission stated that "[i]mmunity for conduct more culpable than ordinary negligence [was] against Missouri's public policy" and that "[l]iability for negligence encourages [MGE] to take such safety precautions as are in [MGE's] control, which promotes the public interest."

In regard to MGE's Tariff Sheet R–34 Paragraph 4, which "limits the customer's liability to damage caused by [third] persons on the premises," the Commission found that this paragraph was not unjust and unreasonable on its face. This provision stated:

> The owner/customer shall be responsible at all times for the safekeeping of all Company property installed on the premises being served, and to that end shall give no one, except the Company's authorized employees, contractors or agents, access to such property. The owner/customer of the premises being served shall be liable for and shall indemnify, hold harmless and defend the Company for the cost of repairs for damage done to Company's property due to negligence or misuse of it by the owner/customer or persons on the premises affected thereby.

The Commission determined that the customer was better able to prevent third person damage, such as by a trespasser, than MGE, especially where meters were located inside the home. Therefore, the Commission granted MGE's summary determination as to Tariff Sheet R–34 Paragraph 4.

The Commission found that Paragraph 5 of MGE's Tariff Sheet R–34 was unjust and unreasonable only in part. This provision stated:

> The Company shall not be liable for loss, damage or injury to persons or property, in any manner directly or indirectly connected with or arising out of the delivery of gas through piping or gas utilization equipment on the delivery side of the meter, which shall include but not be limited to any and all such loss, damage or injury involving piping, vents or gas utilization equipment, whether inspected or not by the Company, or occasioned by interruption, failure to commence delivery, or failure of service or delay in commencing service due to accident to or breakdown of plant, lines, or equipment, strike, riot, act of God, order of any court or judge granted in any bonafide adverse legal proceedings or action or any order of any commission or tribunal having jurisdiction; or, without limitation by the preceding enumeration,[2] any other act or things due to causes beyond Company's control, or attributable to the negligence of the Company, its employees, contractors or agents.

The Commission found that this paragraph immunized MGE from events not within MGE's control and from MGE's negligence. The Commission noted that "immunity for negligence is not against public policy for ordinary business activities." The Commission stated that "immunizing [MGE] from culpability that is less than ordinary negligence cannot be against public policy for ordinary business activities" and "is not generally contrary to the public

**2.** The Commission rejected the OPC's argument alleging that this paragraph somehow nullified circuit court judgments. The Commission determined the "language merely grant[ed] immunity for losses due to a court-ordered service stoppage."

interest." The Commission concluded, however, that Paragraph 5 of MGE's Tariff Sheet R–34 was unjust and unreasonable insofar as it purported to immunize MGE from liability against any allegation of MGE's negligence relating to inspection, leakage, and repair.

Because the Commission found that MGE's Tariff Sheet R–34 was unjust and unreasonable as to Paragraphs 1, 2, 3, and 5, the Commission ordered MGE to file a new tariff sheet in compliance with its Final Order. The Commission's order stated:

No later than December 9, 2011, [MGE] shall file a P.S.C. MO. No. 1, Fifth Revised Sheet R–34 ("new tariff sheet"). The new tariff sheet shall set forth terms of service that are not unjust and unreasonable as set forth in the body of this order. [MGE] shall file the new tariff sheet under this file number.

Finally, the Commission granted summary determination for MGE as to the Staff's charges that MGE's Tariff Sheet R–34 violates certain provisions of the Commission's Natural Gas Safety Rules. The Commission also denied the Staff's summary determination in regard to its allegation that the Laclede Order GT–2009–0056 constituted "an authoritative statement of Commission policy." Specifically, the Commission stated that the Laclede Order only determined the issues in that action and that "[t]he tariff order did not declare a policy statement about tariff provisions generally." The Commission, therefore, granted summary determination for MGE on these claims.

On November 18, 2011, the OPC and the Consumers Council of Missouri filed a Joint Application for Rehearing.[3] The same day, MGE filed an application for rehearing. The Commission denied all applications for rehearing on December 7, 2011. This appeal followed.

■■■ " 'A tariff is a document which lists a public utility services and the rates for those services.' " *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 337 (Mo.App.2006) (quoting *Bauer v. Sw. Bell Tel. Co.*, 958 S.W.2d 568, 570 (Mo.App.1997)). Any validly adopted tariff "has the same force and effect as a statute, and it becomes state law." *State ex rel. Mo. Gas Energy*, 210 S.W.3d at 337. We review the Commission's decision regarding MGE's tariff to determine whether the Commission's decision is lawful and reasonable. *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 186 S.W.3d 376, 381 (Mo.App.2005); *State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n of State of Mo.*, 328 S.W.3d 316, 318 (Mo.App.2010). Lawfulness is determined by whether or not the Commission had the statutory authority to act as it did. *State ex rel. Mo. Gas Energy*, 186 S.W.3d at 382; *State ex rel. Laclede Gas Co.*, 328 S.W.3d at 318. Reasonableness depends on whether or not "(i) the order is supported by substantial and competent evidence on the whole record, (ii) the decision is arbitrary, capricious or unreasonable, or (iii) the Commission abused its discretion." *State ex rel. Mo. Gas Energy*, 186 S.W.3d at 382; *State ex rel. Laclede Gas Co.*, 328 S.W.3d at 318. "The party seeking to set aside the Commission's order has the burden to prove by clear and satisfactory evidence that the order was unlawful or unreasonable. § 386.430[, RSMo 2000]." *State ex rel. BPS Tel. Co. v. Mo. Pub. Serv. Comm'n*, 285 S.W.3d 395, 401–02 (Mo.App.2009);

---

3. The Consumers Counsel of Missouri did not seek to intervene in this appeal before this court.

*State ex rel. Laclede Gas Co.*, 328 S.W.3d at 318.

■ In its first point on appeal, the OPC claims that the Commission's order granting MGE's motion for summary determination is unlawful because it lacks the required public interest determination as required by 4 CSR 240–2.117(1)(E) and lacks sufficient findings and conclusions to support the summary determination. We disagree.

Regulation 4 CSR 240–2.117(1)(E) provides:

> The commission may grant the motion for summary determination if the pleadings, testimony, discovery, affidavits, and memoranda on file show that there is no genuine issue as to any material fact, that any party is entitled to relief as a matter of law as to all or any part of the case, and the commission determines that it is in the public interest. An order granting summary determination shall include findings of fact and conclusions of law.

We agree with the OPC that this rule requires the Commission to determine that granting summary determination is in the public interest, but we do not agree with the OPC that the rule requires the Commission to make an express finding that summary determination is in the public interest. The rule does not require that a specific, articulated public interest finding be contained in the order. All that is required is that the Commission be of the view that its using the summary determination procedure in the case is in the public interest. The rule merely reserves unto the Commission the discretion to deny summary relief if it believes that the first two elements have been met but that summary determination is not in the public interest.

Indeed, the Commission recognized in its determination that, to prevail on their motions for summary determination, each party had to show that granting summary determination was in the public interest. Moreover, the Commission, relying on section 386.610, RSMo 2000, noted that public interest includes factors related to "efficient facilities and substantial justice between patrons and public utilities." Thus, in making its determination in this case, the Commission was aware of the requirements of Regulation 4 CSR 240–2.117(1)(E), and, by granting in part MGE's motion for summary determination, the Commission necessarily determined that granting MGE's summary determination motion in part was in the public interest. Further, all the parties asked the Commission to make a summary determination in this case and contended that it would be in the public interest for the Commission to make a summary determination. Therefore, because Regulation 4 CSR 240–2.117(1)(E) does not require the Commission to make a specific articulated public interest finding in its order, the Commission's order granting MGE's motion for summary determination is not unlawful.

In its second point on appeal, the OPC claims that the Commission's decision is unlawful and unreasonable to the extent that it allowed MGE's tariff to include an exculpatory clause immunizing MGE from liability for personal injury or property damage caused by MGE's negligence but manifesting itself on customer-owned gas utilization equipment on the customer side of the meter. In particular, the OPC claims that the Commission's order is unlawful and unreasonable in that (1) granting such immunity was beyond the Commission's authority, (2) the Commission's decision violates common law and public policy, and (3) the Commission failed to articulate a rational basis for contradicting a recent order in another case before the

Commission, where the Commission rejected a similar provision regarding immunity.

■ Before addressing the merits of this point, we consider MGE's motion suggesting that we should not address this point because it is moot. MGE contends that, because the tariff sheet at issue in this case has been superseded by a subsequent tariff,[4] the OPC's point on appeal has been rendered moot. Indeed, the tariff sheet at issue in the original complaint and at issue in this appeal has been superseded by a new tariff sheet, which was submitted to the Commission by MGE on December 9, 2011, and was approved by the Commission.

■ " 'When tariffs are superseded by subsequent tariffs that are filed and approved, the "superseded tariffs are generally considered moot and therefore not subject to consideration" ' because 'superseded tariffs cannot be corrected retroactively.' " *State ex rel. Praxair, Inc. v. Pub. Serv. Comm'n of the State of Mo.*, 328 S.W.3d 329, 334 (Mo.App.2010) (quoting *State ex rel. City of Joplin v. Pub. Serv. Comm'n of State of Mo.*, 186 S.W.3d 290, 295 (Mo.App.2005) and *State ex rel. Mo. Pub. Serv. Comm'n v. Fraas*, 627 S.W.2d 882, 885 (Mo.App.1981)). "[A]n exception to the mootness doctrine ... exists [w]here the issue raised is one of general public interest and importance, recurring in nature and will otherwise evade appellate review unless the court exercises its discretionary jurisdiction." *State ex rel. Praxair*, 328 S.W.3d at 334 (citation omitted and internal quotation marks omitted). Thus, this court in our discretion may invoke an exception to the mootness doctrine "when it is demonstrated that the case in

question 'presents an issue that (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies.' " *Id.* at 334–35 (citation omitted). "[W]e will exercise this discretionary jurisdiction if 'there is some legal principle at stake not previously ruled as to which a judicial declaration can and should be made for future guidance.' " *State ex rel. City of Joplin*, 186 S.W.3d at 295 (quoting *Fraas*, 627 S.W.2d at 885).

We find that the mootness exception applies in this case because a declaration should be made for future guidance regarding the ability of the Commission to allow a utility company to include an exculpatory clause in a tariff that immunizes the company from liability for any personal injury or property damage caused by the company's negligence occurring on the customer's property and gas utilization equipment. This is an issue of general public interest, will likely recur in the future, and will evade appellate review in future live controversies. We, therefore, deny MGE's motion regarding mootness.

The provision of the tariff at issue is Paragraph 5 of MGE's Tariff Sheet R–34, which provides:

> The Company shall not be liable for loss, damage or injury to persons or property, in any manner directly or indirectly connected with or arising out of the delivery of gas through piping or gas utilization equipment on the delivery side of the meter, which shall include but not be limited to any and all such loss, damage or injury involving piping, vents or gas utilization equipment, whether inspected or not by the Company, or occasioned by interruption, failure to commence delivery, or failure of service or delay in commencing service due

---

4. The subsequent tariff contains some of the same language that the OPC claims is objectionable in the tariff at issue in this case.

to accident to or breakdown of plant, lines, or equipment, strike, riot, act of God, order of any court or judge granted in any bonafide adverse legal proceedings or action or any order of any commission or tribunal having jurisdiction; or, without limitation by the preceding enumeration, any other act or things due to causes beyond Company's control, or attributable to the negligence of the Company, its employees, contractors or agents.

The Commission found that, "[a]s to the customer side generally," this paragraph immunized MGE from events not within MGE's control and from events caused by MGE's negligence. Relying on the Missouri Supreme Court's decision in *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596 (Mo.1968) (holding that a tariff may give a telephone company immunity from ordinary negligence in regard to its failure to correctly edit a telephone directory), the Commission concluded that "immunity for negligence is not against public policy for ordinary business activities." The Commission stated that "immunizing [MGE] from culpability that is less than ordinary negligence cannot be against public policy for ordinary business activities" and that "immunity for negligence is not generally contrary to the public interest."[5] The OPC claims that the Commission effectively concluded that the Commission has the authority to give complete immunity to a utility company from liability in a court of law when the company's negligence is responsible for the death of a customer, for personal injury to a customer, or for the destruction of a customer's property.

■■■ "[T]he lawfulness of orders issued or actions taken by the Commission depends primarily on whether the Commission had statutory power and authority to act." *State ex rel. Philipp Transfer Lines, Inc. v. Pub. Serv. Comm'n*, 599 S.W.2d 82, 86 (Mo.App.1980). The Commission is "an administrative body created by statute and has only such powers as are expressly conferred by statute and reasonably incidental thereto." *State ex rel. AG Processing Inc. v. Thompson*, 100 S.W.3d 915, 919 (Mo.App.2003). The Commission's authority, therefore, must come from the statutes, and the Commission merely carries out the public policy declared by the Missouri Legislature. *State ex rel. Springfield Warehouse & Transfer Co. v. Pub. Serv. Comm'n*, 240 Mo.App. 1147, 225 S.W.2d 792, 794 (1949).

■■■ Common law in Missouri favors a system where its citizens may file an action for negligence when a company's negligence causes injury or harm.[6] "[U]nless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid." *In re Estate of Parker*, 25 S.W.3d 611, 614 (Mo.App.2000). We find no statute, and the Commission and MGE do not direct us to any such statute, that grants the Commission the authority to limit a public utility's negligence liability involving personal injury or property damage. Nowhere do the statutes establish a policy

---

**5.** The Commission concluded, however, that Paragraph 5 of MGE's Tariff Sheet R–34 was unjust and unreasonable insofar as it purported to immunize MGE from liability against any allegation of MGE's negligence relating to inspection, leakage, and repair.

**6.** "To make an adequate claim for common law negligence, a plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *Sill v. Burlington N. R.R.*, 87 S.W.3d 386, 391 (Mo.App.2002) (citing *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000)).

suggesting that a public utility company should be immune from negligence liability when its negligence is responsible for a customer's death, injury, or damage to property.

 "Where the legislature intends to preempt a common law claim, it must do so clearly." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000). It is axiomatic that what the legislature must itself do explicitly it cannot impliedly empower the Commission to do. Because we find no statute empowering the Commission to abrogate a customer's right to sue a public utility company for negligence involving personal injury or property damage, we conclude that the Commission does not have the statutory authority to approve of a public utility's attempt to abrogate these common law rights in a tariff sheet. The legislature is the appropriate entity to abrogate negligence claims against public utilities involving personal injury or property damage or it is the entity to expressly delegate that power to the Commission.[7] Until the legislature does so and does so explicitly, however, the Commission has no authority to abrogate an action for common law negligence involving personal injury or property damage.

To support its claim that the Commission may limit MGE's liability, MGE and the Commission rely on *Warner v. Southwestern Bell Telephone Company*, 428 S.W.2d 596 (Mo.1968). In that case, telephone subscribers brought an action against Southwestern Bell for negligence due to Southwestern Bell's incorrect listing of the plaintiffs' business in two different telephone directories. *Id.* at 599. Southwestern Bell's tariff limited Southwestern

Bell's liability "for damages arising from errors or omissions in the making up or printing of its directories ... to the amount of actual impairment of the customer's service." *Id.* at 600. The tariff stated that "in no event shall it exceed the amount paid for the service during the period covered by the Directory in which the error or omission occur[red]." *Id.* The *Warner* court held that the limitations of liability contained in utility company's rate schedule were binding on customers and become part of the law, unless the limitations of liability were found to be unreasonable. *Id.* at 601. The court found that, because a public utility was strictly regulated in it rights and privileges, it should also be regulated "to *some extent*" in its liabilities. *Id.* (Emphasis added). The court further noted that limitations of liability are at least indirectly considered and involved in establishing a utility company's rates. *Id.* at 602. The *Warner* court acknowledged, however, that "although such limitation provisions are generally valid and enforceable, they do not exempt a defendant when its conduct has been wanton or willful." *Id.* at 603.

The *Warner* case, however, did not involve a tariff that attempted to limit a public utility's liabilities in a negligence action that could result in personal injury or property damage to the customer. *Warner* involved lost business sales due to an incorrect directory listing, which involve purely economic damages. It certainly makes sense that limitations of liability involving economic damages are the types of limitations that would be involved in establishing a utility company's rates. The same cannot be said of limitations of liabilities in a negligence action involving personal injury or property damage.[8]

7. We do not express any opinion about the constitutionality of any such legislation in as

much as this court is not the appropriate forum. Mo. Const. art. V, § 3.

8. We acknowledge that other jurisdictions

Moreover, in *Warner*, the tariff merely set a cap on the telephone subscriber's recovery for its negligence claim against Southwestern Bell; it did not completely abrogate the subscriber's negligence claim against the public utility as the tariff does in this case. Thus, because the Supreme Court did not determine the issue before us—that is whether the Commission has the authority to approve a public utility's tariff sheet that would essentially abrogate a customer's right to sue a public utility company for negligence involving personal injury or property damage—we do not find *Warner* controlling.

The same is true of the Supreme Court's decision in *State ex rel. Western Union Telegraph Company v. Public Service Commission*, 304 Mo. 505, 264 S.W. 669 (1924). In that case, the court upheld the validity of a limitation of liability relating to the non-delivery of telegraphic messages. *Id.* at 672. Again, this case concerned limitations of liability concerning the company's mistakes, delays, or non-delivery of messages, which, like *Warner*, concerned economic damages and not personal injury or property damages. In so holding, the *Western Union* court noted: "The basing of rates in part on the liability involved in a given service is not … a limitation of liability; it is a mere determination in advance of the maximum amount thereof, a liquidation of the damages, contingent upon the nonperformance or the negligent performance of the service." *Id.* at 671. The court concluded, therefore, that "the liability involved in providing the service" is a proper element to be considered in rate-making. *Id.* The type of limitations in *Western Union* and in *Warner* concerned economic damages which are most definitely a type of liability involved in a utility company's service. *Id.* Liabilities in a negligence action involving personal injury or property damage are not the type of liabilities involved in the service of providing natural gas that the Commission may limit in establishing rates unless the Legislature provides the Commission with such explicit authority by statute. Moreover, just as in *Warner*, the limitations of liability at issue in *Western Union* merely set a cap on the amount a sender of a telegraphic messages could recover against Western Union for mistakes or delays by it in handling telegraphic messages; it did not completely abrogate a sender's negligence claim against the public utility as the tariff does in this case.

Because we find no statute abrogating a customer's right to sue a public utility company for negligence involving personal injury or property damage, we conclude that the Commission's decision is unlawful because it acted beyond its authority.[9] We, therefore, reverse the Commission's decision and remand this case to the Com-

---

have found that a tariff may limit a utility company's liability in a negligence action involving personal injuries, but we find their rationale unpersuasive. *See e.g. Los Angeles Cellular Tel. Co. v. Superior Court of Los Angeles Cnty.*, 65 Cal.App.4th 1013, 76 Cal.Rptr.2d 894 (Cal.Ct.App.1998); *Landrum v. Fla. Power & Light Co.*, 505 So.2d 552 (Fla.Dist.Ct.App. 1987); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex.2002). These courts merely determined that limitations of liability are properly included in tariffs and that the limitations of liability at issue applied to negligence actions without regard to the nature of damages sought and, therefore, included personal injury damages.

9. Because we reach this conclusion, we need not address the OPC's contention that the Commission failed to articulate a rational basis for contradicting a recent order in another case before the Commission, although the Commission, unlike a court of law, is unencumbered by the doctrine of *stare decisis*. *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 736 (Mo. banc 2003).

mission for further action consistent with this opinion.

All concur.