IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 16, 2013 Session

## IN THE MATTER OF: JOZIE C.A.

**Direct Appeal from the Juvenile Court for Madison County**
**No. 49-44,450        Rachel Jackson, Judge sitting by Assignment**

_____

**No. W2012-01947-COA-R3-JV - Filed June 18, 2013**

_____

The trial court granted Mother's petition to modify custody and name Mother primary
residential parent. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed
and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,
W.S., and J. STEVEN STAFFORD, J., joined.

Michael A. Carter, C. Timothy Crocker, J. Noble Grant, III and Ryan Landry Hall, Milan,
Tennessee, for the appellant, John Arnold.

Elizabeth G. Ford, Jackson, Tennessee, for the appellee, Karen Rosebrough.

**MEMORANDUM OPINION[1]**

This appeal arises from the most recent of several petitions to modify child custody
litigated by Plaintiff/Appellee Karen Rosebrough ("Mother") and Defendant/Appellant John
Arnold ("Father"), the unwed parents of a minor child, Jozie, born in September 2004. It is
the second appearance of this dispute in this Court. In November 2006, the Juvenile Court

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse
or modify the actions of the trial court by memorandum opinion when a formal opinion
would have no precedential value. When a case is decided by memorandum opinion it shall
be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited
or relied on for any reason in any unrelated case.

for Madison County entered a consent order providing that Mother and Father would share joint legal custody of Jozie, and that Father would be her primary residential parent. The 2006 agreed order provided that Mother would have parenting time two nights per week, including one weekend night. The order provided that Father would provide childcare when necessary, medical insurance, and dental insurance. It also provided that neither Mother nor Father would have overnight guests of the opposite sex while Jozie was in their care and custody. It further provided that decisions regarding school vacations would be decided when Jozie entered school. *In re Jozie C.C.*, No. W2010-02070-COA-R3-JV, 2011 WL 4483358 (Tenn. Ct. App. Sept. 28, 2011), *perm. app. denied* (Tenn. Feb. 15, 2012)("*Jozie I*"). Mother, acting *pro se*, filed her first petition to modify the custody agreement in February 2010, and the parties have been acrimoniously pursuing prolonged and tortuous litigation of the matter ever since.

The current appeal arises from a motion to modify and for expedited hearing filed by Mother on July 16, 2012. Following a hearing on August 8, 2012, the trial court found that Mother had proven a material change in circumstances sufficient to justify a modification of custody, and that it was in Jozie's best interest to transfer primary residential parenting status to Mother. The trial court set Father's child support obligation at $220 per month, and off-set that obligation by Mother's arrearage in the amount of $6,186. The trial court also vacated previous restrictions against the presence of a paramour where no findings had been made that the presence of Mother's paramour had any harmful effect on Jozie.

The trial court entered judgment in the matter on August 23, 2012, and Father filed a timely notice of appeal to this Court on August 29. On August 31, 2012, Father filed a motion to stay and memorandum of law in the trial court, asserting that there were no pending matters before the court prior to Mother's July 2012 motion, and that Mother had inappropriately caused a subpoena to be issued rather than a summons. He further asserted that the subpoena was issued on or about July 30, 2012, and served upon him on July 31, eight days before the August 8 hearing. He asserted that the trial court erred by failing to treat Mother's motion as a new civil action. He further asserted that the certificate of service included with the motion was defective. Following a hearing on September 12, 2012, the trial court denied Father's motion by order entered the same day. Father filed a motion to stay in this Court on September 14, 2012, which we denied by order entered September 21, 2012. Briefing in the matter was completed by the parties in January 2013, and the matter was heard by this Court on April 16, 2013. We affirm.

### *Issues Presented*

The issues for our review, as presented by Father, are:

(1)     [Whether] the trial court erred by conducting a trial on Mother's motion to modify and for expedited hearing because no summons was issued as required by Tennessee Rule of Civil Procedure 4.01, and the Certificate of Service attached to the same was defective.

(2)     [Whether] the trial court erred by conducting a trial on Mother's motion because Father had insufficient notice which deprived him of the proper time to respond in violation of his due process rights.

(3)     [Whether] the trial court erred by improperly allowing records from Pathways Behavioral Health Sciences into evidence in violation of Tennessee Rule of Evidence 902(11).

(4)     [Whether], in its order of August 29, 2012, the trial court erroneously based its ruling on issues that were *res judicata*.

(5)     [Whether] Mother failed to carry her burden to prove a material change in circumstances had occurred.

(6)     [Whether], even if a material change in circumstances occurred, Mother failed to carry her burden [to] show that a change in custody was in the best interest of the parties' minor child.

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo,* however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *State v. Ingram,* 331 S.W.3d 746, 755 (Tenn .2011).

### *Discussion*

A thorough discussion of the long and rather contorted procedural history in this matter is necessary to our analysis of the issues raised on appeal. In her February 2010 petition to modify custody, Mother sought to be named primary residential parent and asserted that Jozie had physically resided with her since January 2007. Father did not file an answer to the petition, but filed several discovery requests, including interrogatories, requests

for admission, and a motion for a psychological evaluation of Mother. *In re: Jozie C.C.*, 2011 WL 4483358, at *1. Following a number of continuances and Father's motion to compel discovery, the juvenile court conducted a "rather unorthodox hearing" of the matter in July 2010. *Id.* The court denied Mother's petition to be named primary residential parent, but altered the visitation schedule to give her parenting time every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m. in light of the fact that Father had relocated to a different county, making the weeknight visits difficult. *Id.* at *2. The court reserved the issue of a holiday visitation schedule. The court ordered mother not to take Jozie to Mother's paramour's pawn shop, which Mother admitted having done, or to have her "around anyone of the opposite sex that [she is] not married to." *Id.* The trial court also ordered Mother to produce records from a mental health treatment facility where she had been treated. The juvenile court did not place other restrictions on Mother's rights or visitation. *Id.* By final order entered in September 2010, the trial court stated that Mother had not proven a material change in circumstances, but that modification of the visitation schedule was in Jozie's best interest. The juvenile court further ordered that "'Mother . . . is not allowed to go to school unless the Father is there as well . . . and is not to take the child around Tom Krasner [her paramour], including, but not limited to, at his pawn shop or the river.'" *Id.* Mother appealed, asserting, *inter alia*, that her petition to change custody was supported by a material change in circumstances. *Id.* Upon review of the record, we noted that we agreed with Mother "that portions of the September 13th, 2010 order entered by the trial court [did] not accurately reflect the evidence presented[.]" *Id.* at *4. We nevertheless concluded that Mother had failed to carry her burden to demonstrate that a material change in circumstance had occurred warranting a change in primary residential status. *Id.* On September 28, 2011, we affirmed the juvenile court's judgment. *Id.* at *5.

In the meantime, while the matter was pending in this Court, Mother filed a motion styled "Motion for Temporary Disposition and/or Release from Order" in October 2010. We construed Mother's motion as a motion to stay the juvenile court's order, and denied the motion on October 29, 2010.

Also during the pendency of the appeal in *Jozie I*, Father filed a motion for contempt and child support in the juvenile court on October 29, 2010. In his motion, Father asserted that Mother had failed to produce records of counseling or to keep Jozie away from Todd Krasner (Mr. Krasner) as ordered by the juvenile court. Father also asserted that Mother had not paid child support, that she continued to go to Jozie's school despite being ordered not to, and that Mother had "testified in Circuit Court that she intend[ed] to keep being in contempt of the [c]ourt's orders." Father prayed the juvenile court to modify the visitation schedule to provide that Mother's visitation would be supervised, for an award of child support, and for an award of attorney's fees.

In November 2010, Mother filed a motion styled "Motion for Temporary Disposition and/or Release from Order" and "Motion for Relief from Ruling" in the juvenile court, and requested relief pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. In her motion, Mother asserted, *inter alia*, that Father had committed a fraud upon the court, had tampered with the witnesses in the July proceedings, and that her "parental rights were terminated without a trial." She further stated that the findings of the trial court were not supported by the evidence, and that there was no evidence that Mr. Krasner was unfit or posed a danger to children. Mother also asserted that Father had been unemployed for over two years; that Father did not testify at the hearing before the juvenile court or call any witnesses; and that she had never been ordered to pay child support but had financially provided for Jozie. She additionally asserted that she was not in contempt of court and that she had followed the court's September 13, 2010, order.

On January 20, 2011, Mother filed a petition requesting the juvenile court to question Jozie. On January 24, Father filed a petition for "emergency ex parte custody." In his petition, Father asserted Jozie had "been subjected to or threatened with mistreatment or abuse or [was] otherwise neglected or dependent." He further asserted that Mother had not provided records of mental health counseling as ordered by the juvenile court, and that Jozie had been "traumatized" by Mother's attempts to convince her to lie to the court. Father further stated that Mother was "dangerous" and had made threats against Father and his wife. He also asserted that Mother was physically and emotionally abusing Jozie by examining her physically for signs of sexual abuse. Father asserted, "[u]ntil Mother gets the psychological, [sic] checks into some kind of program, start [sic] a drug regimen, and stay [sic] under a doctor's treatment and gets parenting [sic] she is not fit to see her children." He further asserted that Mother had "filed motion after motion in the various courts mixing the cases regarding both of her children and their two fathers together." Father answered and responded in opposition to Mother's January 20 motion on February 3.

The Madison County Juvenile Court Judge moved *sua sponte* to be recused from the matter and on February 3, 2011, the Chief Justice of the Tennessee Supreme Court assigned the Honorable Rachel Jackson, Lauderdale County General Sessions Court Judge, to preside over the matter. Following a hearing on Father's motion, by order entered February 8, 2011, the court construed Father's motion as a motion for temporary restraining order and ordered Mother to have no unsupervised visitation with Jozie pending a hearing set for February 15, 2011. On February 14, Mother refiled her motion for release from the juvenile court's order and also filed an answer to Father's petition for emergency custody and a restraining order, moving the court to strike the emergency petition and restraining order. In her motion, Mother denied allegations of wrongdoing and asserted that statements made by Father's counsel alleging that Mother needed to be under a doctor's treatment and required a "drug regimen" were "ridiculous, perjurious and extremely prejudicial" and that counsel should be

subject to sanctions for her conduct.

Father's counsel filed a motion to withdraw from the matter on February 18, 2011, asserting that she and Father had agreed that he would proceed *pro se* in the matter. Counsel's motion was granted by agreement of Father and counsel on February 24, 2011. On February 25, counsel associated with the firm of Spragins, Barnett & Cobb, PLC, filed a notice of appearance in the matter. On February 28, 2011, Mother, still acting *pro se*, filed a motion to modify the juvenile court's August 6, 2010, order.

On March 4, 2011, the trial court entered a HIPPA Order authorizing and ordering the release of mother's mental health treatment/counseling records. Curiously, the March 4 order was signed by Father's former attorney, Lanis Karnes (Ms. Karnes), and not by an attorney associated with Spragins, Barnett & Cobb. The trial court also heard the matter on March 4, 2011. By order entered May 27, 2011, the juvenile court held that child support would be set according to the child support guidelines and ordered Mother to provide a copy of her 2010 1099 or W-2 to Father's counsel. The court stated that Father's income would be imputed at minimum wage based on voluntary underemployment, and that the calculation would be based on 280 days of parenting time by Father, and 85 days by Mother. The trial court determined that Father's claim of contempt against Mother for the failure to provide counseling records was moot and that Mother did not allow Jozie to have contact with Mr. Krasner after notice to her of the court's order prohibiting it. The court also found that the date of Mother's visit to Jozie's school was disputed; that the school staff testified that Mother made no disruption, and that Mother had not attempted to visit the school at any other time. The trial court also found that Mother did not pose any danger or risk to Jozie, and that supervised residential periods were not necessary. The trial court found Mother not to be in contempt; withdrew the temporary restraining order; and awarded Mother standard shared parenting rights. The trial court set Mother's child support obligation at $288 per month; established retroactive support in the amount of $2016; and ordered Mother to pay retroactive support as a rate of $32 per month. The trial court denied all claims for attorney's fees; ordered the parties not to discuss the issues of custody or the court proceedings with Jozie or in her presence; and dismissed all other allegations and pending matters.

In the meantime, Mother filed an additional motion to modify on March 31, supported by her own affidavit and that of Mr. Krasner. On May 3, 2011, Mother filed a motion for default judgment, and on June 8, she filed a motion for an expedited hearing or direct order. In her motions, Mother prayed the court to lift the order prohibiting Jozie from being in the presence of Mr. Krasner.

Counsel for Father withdrew from the matter pursuant to an agreed order on June 14, 2011. On June 24, the Chief Justice of the supreme court assigned the Honorable Charles

M. Cary, Hardeman County Juvenile Court Judge, to preside over the matter. Following a hearing on June 24, 2011, by order entered July 11, 2011, the trial court determined that the parties "were basically in agreement" with respect to permitting Mother to visit Jozie's school, and ordered that she be allowed to do so. The trial court found that the parties both were entitled to the rights setforth in Tennessee Code Annotated § 36-6-101. Noting that jurisdiction might not be present where Mother's appeal of the trial court's August 2010 order was pending in this Court, the trial court ordered that until Mother married Mr. Krasner or "establishe[d] her permanent residence in [his] home," that Mr. Krasner was prohibited from being in the presence of Jozie after 10:00 p.m. or before 8:00 a.m. The court additionally ordered that Jozie would not be permitted in Mr. Krasner's pawnshop at any time, regardless of Mother's relationship with Mr. Krasner. The trial court reserved all other matters to be decided by Judge Jackson.

Our Opinion and Order of Judgment in *Jozie I* was filed on September 28, 2011. Mother's application for permission to appeal to the Tennessee Supreme Court was denied by order entered February 15, 2012. As noted above, Mother filed the pleading styled "Motion to Modify and for Expedited Hearing" that is the focus of the current appeal on July 16, 2012. On August 8, 2012, the day the matter was heard, Mother's counsel filed a notice of appearance in the matter; Father acted *pro se* at the hearing of the matter. Counsel for Father filed a notice of appearance on August 28, 2012. Both parties are represented on appeal. With this background in mind, we turn to the issues raised on appeal.

### *Notice*

We turn first to the issues raised by Father with respect to notice. In his brief to this Court, Father asserts that the trial court erred by conducting a trial on Mother's motion to modify custody because no summons was issued as required by Tennessee Rule of Civil Procedure 4.01, because the Certificate of Service attached to Mother's motion was defective, and because he accordingly did not have adequate notice. He contends that there were no claims pending before the trial court when Mother filed her July 16, 2012, motion to modify, that Mother's motion therefore was properly regarded as a petition asserting a new claim, and that the trial court erred by conducting a hearing on the matter where Mother did not cause a summons to be issued but caused a subpoena to be issued on or about July 30, 2012. Father does not contend that he did not have notice of the matter, but contends that notice was insufficient where he was served with a subpoena on July 31, 2012, where no summons was issued, and where he had fewer than 30 days to respond to Mother's motion/petition.

We begin our discussion of this issue by noting that even if we assume, as Father contends, that there were no unresolved issues before the trial court when Mother filed her

July 2012 motion/petition notwithstanding that the trial court's July 2011 order reserved pending issues for later determination, Father does not dispute that he had notice of the August 2012 hearing. We additionally note that Father filed neither an answer to Mother's motion/petition nor a motion to continue the matter. Rather, when the trial court noticed that Father had not filed a response, Father stated, "I'm here to answer today." We further note that Father appeared on August 8, 2012, with several witnesses to testify on his behalf, and that Father did not raise the issue of lack of a summons or insufficiency of notice at the trial of this matter. Rather, the issues raised on appeal were raised for the first time in Father's August 31, 2012, motion to stay the matter, which Father filed contemporaneously with his notice of appeal to this Court.

Service of a summons may be waived. Tenn. R. Civ. Pro. 4.07. Further, Tennessee Rule of Civil Procedure 12.02 provides that the defense of insufficiency of process, among others, "shall be asserted in the responsive pleading" and "may at the option of the pleader be made by motion in writing." Rule 12.08, moreover, states that "[a] party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply." We have held that "'if a party makes a general appearance *and does not take issue* with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters' (emphasis added)." *Toler v. City of Cookeville*, 952 S.W.2d 831, 835 (Tenn. App. 1997) (quoting *Dixie Sav. Stores, Inc. v. Turner,* 767 S.W.2d 408, 410 (Tenn. App. 1988)). Finally, issues not raised in the trial court may not be raised for the first time on appeal. *E.g., Van Grouw v. Malone*, 388 S.W.3d 232, 236 (Tenn. Ct. App. 2010). In this case, Father waived the defenses of insufficient notice, lack of service of a summons, and alleged insufficiencies in the certificate of service where he appeared in the matter, informed the trial court that he was prepared to answer on the day of the hearing, and failed to raise the issue other than in a post-trial motion.

### *Admission of Mental Health Records*

We next turn to Father's contention that the trial court erred by improperly allowing Mother's records from Pathways Behavioral Health Sciences ("Pathways") into evidence. In his brief, Father asserts that the trial court erred by admitting records from Pathways into evidence where Mother did not provide written notice of the records to Father in advance of the hearing or provide Father with an opportunity to inspect the records prior to the hearing as required by Rule 902(11) of the Tennessee Rules of Evidence. Upon review of the record, we note that the trial court specifically asked Father whether he had any objection to the Pathways record, and that he replied, "okay." Father waived any objection to Mother's records from Pathway's. This issue is without merit.

### *Material Change in Circumstances and Best Interest Determination*

We turn next to Father's assertion that the trial court erred by considering matters that were *res judicata* when determining whether a change in circumstances had occurred, that the evidence preponderated against the trial court's determination that a change of circumstances had occurred with respect to factors that were not *res judicata*, and that the trial court erred by determining that a modification of custody was in Jozie's best interest. Whether a material change of circumstances has occurred and where the best interests of the child lie present questions of fact. *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Additionally, where a trial court has found that a material change of circumstance has occurred, its decision on whether a modification in parenting arrangements is warranted is discretionary, and we are loathe to second-guess the trial court's decision absent an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Upon review of the record, we observe that the trial court did not rely on the issues that Father contends were *res judicata* when determining that a change in circumstances had occurred in this case, including that Father is unemployed, that Jozie has expressed a desire to live with Mother, or that Father has relocated. In its August 29, 2012, order, the trial court made a number of findings regarding changes in Mother's circumstances. The trial court determined that Mother's "situation" was "significantly more stable"; that her living conditions had improved, were safer, and were suitable for Jozie; that Mother was in a stable, permanent relationship with a suitable partner; and that she had "steady income" and her financial situation had improved. Significantly, the trial court found that the records from Pathways "not only failed to show any history of mental illness," but "indicate[d] that Mother, 'appeared free of any significant mental illness or personality disorders,' and that Mother was not in need of 'any mental health treatment.'"

We find Father's assertion in his brief that the trial court erroneously considered Mother's mental health status to be disingenuous at best. First, Father continually has placed Mother's mental health into question throughout this tortuous custody battle. Second, contrary to Father's assertion to the contrary in his brief, the trial court did not previously determine that Mother's mental health was a "moot" issue. Rather, the trial court determined that Mother's failure to provide her mental health records was moot for the purposes of Father's claim that Mother was in contempt where the trial court had entered a HIPPA Order authorizing and ordering the release of Mother's mental health records. The issue of Mother's mental health was not previously resolved by the trial court. Third, at the August 8, 2012 hearing of this matter, Father directed questions to Mother concerning matters which he contends were *res judicata*. Finally, Father did not defend against assertions made by Mother in her July 2012 pleading on the basis of *res judicata* in the trial court, and he cannot raise the issue of her pleading for the first time on appeal.

In light of the entirety of the record transmitted to this Court, we cannot say that the evidence preponderates against the trial court's determination that a material change of circumstances had occurred in this case, or that modification of the parenting arrangement was not in Jozie's best interest. Evidence of Mother's mental health stability, without more, constitutes a significant change of circumstances, particularly where Father continually has placed Mother's mental health into question. Additionally, in its best interest analysis, the trial court specifically stated that a determinative factor in its analysis was that "Father has no willingness to facilitate and encourage a close and continuing parent-child relationship between the child and Mother, consistent with the best interest of the child, nor do his wife and parents, who are regular caretakers." Although Father's lack of willingness to facilitate Jozie's relationship with Mother may not constitute a change in circumstance, it is relevant to the trial court's best interest analysis. Upon review of this record, we find no abuse of discretion on the part of the trial court.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, John Arnold, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Finally, we urge Mother and Father to resolve their differences in the best interest of Jozie, and to parent her together as amicably as possible in the future. Notwithstanding the trial court's finding that Mother and Father both love Jozie, the degree of animosity between Mother and Father, as apparent from the record in this case, complete with apparently unsubstantiated allegations of mental health disorders and abuse, cannot be in Jozie's best interest.

_____
DAVID R. FARMER, JUDGE